Dean HVIDSTON and Marjorie
V. Hvidston, Appellants–
Plaintiffs Below,

v.

Louis EASTRIDGE, Ann M. Eastridge,
and Charles T. Pedigo, Appellees–
Defendants Below.

No. 49A04–9009–CV–00421 [1].

Court of Appeals of Indiana,
Third District.

April 29, 1992.

---

**1.** This case was transferred to this office by order of the Chief Judge.

R.C. Richmond, III, Sommer & Barnard, P.C., Indianapolis, for appellants-plaintiffs below.

Edward O. Delaney, Jeffrey C. Toole, Barnes & Thornburg, Indianapolis, for appellees-defendants below.

STATON, Judge.

Dean and Marjorie Hvidston own an apartment building on East Washington Street in Indianapolis, Indiana. Louis and Ann Eastridge and Charles Pedigo (collectively referred to as "the Eastridges") are the owners of real estate bordering the Hvidstons' property to the west. Tenants occupy the home located on the Eastridges' real estate. The house on the Eastridge property and the Hvidstons' apartment were built when the lots were part of one larger tract. This tract was divided in 1937, when the lots were sold to separate purchasers. In order for the tenants to park their vehicles in the garage at the rear of the property, they must use the gravel driveway located between the house and the apartment building. The boundary line between the two properties roughly bisects the driveway in a north/south direction.

In 1977, Stephen Schaler, the Eastridges' predecessor in interest, sued the Hvidstons to quiet title to the driveway. The trial court in this earlier proceeding recognized a permanent easement of necessity[2] in "the existing driveway" so as to allow access to the garage and parking area, but also granted the Hvidstons use of the easement for the purpose of providing repairs and maintenance to the apartment building. In describing the easement, the trial court relied chiefly on a survey of the properties

---

2. It may be more accurate to describe the easement as implied from pre-existing use, as it appears that the driveway was in use prior to the severing conveyance. *See* R. Cunningham, W. Stoebuck & D. Whitman, The Law of Property § 8.4 (1984). Nonetheless, the parties do not question the description given to the easement in this earlier proceeding, and a way of necessity would have been implied had such a driveway not been in use at the time. *See id.* § 8.5.

conducted in 1974 to determine the dimensions of "the existing driveway."

The Hvidstons filed suit for damages and to rescind the easement in 1985, and the Eastridges counterclaimed for damages. After the Hvidstons failed to respond to the counterclaim, the trial court granted the Eastridges' motion for default judgment. The court also dismissed the Hvidstons' complaint with prejudice.

In 1987, the Hvidstons again filed suit for damages and to vacate the easement, claiming the Eastridges and their tenants impermissibly expanded their use of the easement beyond the scope of the 1977 decree. The Hvidstons obtained a default judgment in this third lawsuit on November 23, 1987, apparently as a result of inadequate service upon the Eastridges. On March 21, 1988, Dean Hvidston installed posts at the entrance to the driveway, preventing access to the garage. That same day, the Eastridges obtained an emergency order commanding Hvidston to remove the posts. Hvidston complied with the decree but erected fenceposts and drove metal stakes in or near the easement a few months later.

After the Eastridges obtained relief from the default judgment, the Hvidstons filed an amended complaint to vacate the easement, and the Eastridges counterclaimed for damages. After a bench trial, the trial court held that the easement included the area along the property line east of the Eastridges' garage (the "disputed area"), and modified the easement to allow the parties to park their vehicles on the driveway.[3] The court further prohibited the Hvidstons from driving stakes or poles into the ground on the easement or along its boundaries, and gave the Eastridges the exclusive right to grade, maintain and care for the easement. The Hvidstons appeal these determinations, raising the following four issues for our review.

I. Whether the trial court erroneously concluded that the driveway easement included the disputed area.

II. Whether the trial court erroneously modified the decree to permit parking of vehicles on the easement.

III. Whether the trial court erroneously enjoined the Hvidstons from installing stakes or poles along the boundaries of the driveway easement.

IV. Whether the trial court erroneously concluded that the Hvidstons are prohibited from performing any type of maintenance to the driveway easement.

Affirmed in part, reversed and remanded in part.

We note that the trial court entered special findings and conclusions, pursuant to the Eastridges' request. When a party has requested specific findings of fact and conclusions of law under Ind.Trial Rule 52(A), the reviewing court cannot affirm the judgment on any legal basis; rather, the court must determine whether the trial court's findings are sufficient to support the judgment. *Vanderburgh County Board of Commissioners v. Rittenhouse* (1991), Ind.App., 575 N.E.2d 663, 665, *trans. denied.* In reviewing the judgment, we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. *Id.* The judgment will be reversed only when clearly erroneous, i.e., when the judgment is unsupported by the findings of fact and conclusions of law entered on the findings. *DeHaan v. DeHaan* (1991), Ind.App., 572 N.E.2d 1315, 1320, *trans. denied.* Findings of fact are clearly erroneous when the record lacks any facts or reasonable inferences to support them. *Id.* To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility. *Id.*

### I.

### The "Disputed Area"

The trial court interpreted the 1977 decree as establishing an easement of ne-

---

**3.** A diagram of the properties is appended to this opinion.

cessity extending south from Washington Street to a line between the apartment building and the Eastridges' garage (encompassing the "disputed area"). The 1977 decree states in pertinent part:

12. That a survey dated November 11, 1974, by Mid–States Engineering Co., Inc. discloses that a driveway between the Schaler and Hvidston real estate leading to a garage at the rear of the Schaler real estate lies partially within the boundaries of the Hvidstons' real estate.

13. That said driveway is the sole means of access to the garage and parking area at the rear of the Schaler property, and is reasonably necessary for the use and enjoyment of the improvements on the Schaler property.

\*      \*      \*      \*      \*      \*

15. That Schaler and his predecessors have acquired a permanent easement of necessity in favor of themselves and their successors in title to use that portion of the *existing driveway* within the boundaries of the Hvidston property for driveway purposes and their title to such easement should be quieted against the claims of Hvidstons and their successors in title.

16. That Hvidstons and their predecessors have acquired a permanent easement of necessity in favor of themselves and their successors in title to use that portion of the *existing driveway* within the boundaries of the Schaler property for the purpose of making repairs to the improvements on Hvidston's real estate and their title to such easement should be quieted against the claims of Schaler and his successors in title.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the plaintiff, Stephen C. Schaler, for himself and all succeeding owners of the real estate described in paragraph 1 hereof, have a permanent easement of necessity for driveway purposes over that portion of the real estate described in paragraph 2 *lying within the existing driveway* and being a strip of ground approximate-

ly five (5) feet in width off the west side thereof.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendants, Dean Hvidston and Marjorie V. Hvidston, for themselves and all succeeding owners of the real estate described in paragraph 2 hereof, have a permanent easement of necessity for the purpose of making repairs to the improvements on said real estate described in paragraph 1 *lying within the existing driveway* and being a strip of ground approximately five (5) feet in width off the east side thereof.

Record, pp. 50–51 (emphasis added).

The Hvidstons contend that the easement includes only that area located in the gravel driveway as it existed at the time of the 1974 survey. The Eastridges assert that the evidence adduced at trial supports the conclusion that the disputed area is part of the easement, and alternatively, that the disputed area became part of the easement by virtue of the Hvidstons' acquiescence.

At the time of the conveyance dividing the parcels in this case, the owners of the property now held by the Eastridges used the driveway for access to the garage, while the owners of the real estate now owned by the Hvidstons used the driveway to make repairs and improvements thereon. This use is accurately reflected in the 1977 decree which recognized the easement. Interpreting this decree in light of the evidence presented at trial, the court in the instant case found that:

16. The driveway-easement extends southward from East Washington Street, between the buildings on the respective parties' properties, and continues back to the line that runs east and west along the front of the Pedigo–Eastridges' garage.

\*      \*      \*      \*      \*      \*

20. The location of the southern end of the driveway is one matter on which the parties disagree. Mr. Hvidston attempted to suggest that the "existing" driveway to which the Decree refers curved into the parking area at the rear of the Pedigo–Eastridges' property, thus

leaving the five foot strip on the Hvidstons' property unused at the rear of the property. But certain of the photographs the Hvidstons submitted show their neighbors' automobiles parked on that supposedly unused portion of the driveway. Moreover, Donald Pedigo testified that for so long as he can remember, tenants of the property used the entire area of the southeastern corner (nearest to the Hvidstons' building) to turn their automobiles around. Consequently since the Decree was entered, tenants have used that corner of the driveway *as* a driveway.

\*    \*    \*    \*    \*    \*

22. The "existing" driveway to which the Decree refers included the southeasterly corner at the rear of the property. The rear of the driveway-easement is bounded on the east by the side of the Hvidstons' apartment building, and is bounded on the south by a line that runs between the Hvidstons' building and the northeastern corner of the Pedigo–Eastridges' garage.

Record, pp. 377–79 (emphasis in original). The trial court then concluded that the 1977 decree described an easement five (5) feet on either side of the line extending south from East Washington Street to a line between the garage and the apartment building. Record, p. 390. While this conclusion is supported by the findings, the findings are not supported by the evidence.

■■■■ · An easement implied by necessity arises simultaneous with the severing conveyance (the division of the larger tract into separate parcels) and "because of the *circumstances then existing,* i.e. inaccessibility". *State v. Innkeepers of New Castle, Inc.* (1979), 271 Ind. 286, 292, 392 N.E.2d 459, 464, *reh'g denied* (emphasis in original). Put another way, an implied way of necessity may not arise from circum-

stances occurring subsequent to the conveyance. *Id.* Therefore, the facts and circumstances occurring after the 1937 conveyance are irrelevant to a determination of the size and extent of the easement recognized by the court in 1977.[4]

The information before the court in 1977 consisted primarily of the 1974 survey. This survey clearly does not include the disputed area in its depiction of the existing driveway. The parties do not refer this court to any evidence to show that the dimensions of the driveway have changed since the date the larger tract was divided into what are now the Eastridge and Hvidston lots. Also, a close inspection of the 1977 decree reveals that the trial court did not consider the disputed area to be included in the easement. Again, we refer to the following language from the 1977 decree, describing the easement as "that portion of the [Hvidston property] lying within the existing driveway *and* being a strip of ground approximately five (5) feet in width off the west side thereof."[5] Record, p. 51 (emphasis added). By its use of the conjunctive "and," the court in 1977 established the parameters defining the easement: it is a strip of ground approximately five feet from the west side of the Hvidston property that is located within the existing driveway. Also, as noted by the Hvidstons, the trial court's interpretation of the 1977 decree would establish an easement the entire length of the common property line, not merely to the line extending from the garage to the apartment building. This interpretation is unsupported by the facts, and is therefore clearly erroneous.

The Eastridges contend that the depiction of the driveway on the 1974 survey is not precisely accurate, and hence, unreliable. Given that the driveway consists of gravel, the lack of precision is understandable. Yet the 1974 survey clearly depicts

4. The Eastridges rely on a number of cases pertaining to the express grant or reservation of an easement. This reliance is misplaced, inasmuch as the easement was not created by written contract or deed by the parties or their predecessors in interest. The 1977 decree did not create the easement; the easement has been in existence since 1937. Rather, the decree

merely affirmed its existence and defined its boundaries.

5. The decree likewise grants the Hvidstons an easement on the Eastridge property "lying within the existing driveway and being a strip of ground approximately five (5) feet in width off the east side thereof." Record, p. 51.

the border of the driveway, and the certificate of survey states in part: "Corners were established and improvements were located as shown hereon." Record, p. 432 (Joint Exhibit 1). An improvement is defined as:

A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes. Generally, buildings, but may also include any permanent structure or other development, such as a street, sidewalks, sewers, utilities, etc. An expenditure to extend the useful life of an asset or to improve its performance over that of the original asset.

Black's Law Dictionary 386 (abridged 5th ed. 1983). The gravel driveway in this case is clearly an improvement over what was once either a dirt driveway or no driveway at all. Moreover, the 1977 decree recognized that the easement could not be precisely defined for this same reason, defining the width of the easement as *approximately* five feet away from the property line. The Eastridges did not challenge the 1977 decree after it was entered, and may not now attack its validity in this appeal. It was perfectly reasonable for the court in 1977 to rely upon boundaries established by the 1974 survey in fashioning the decree. *See also Popp v. Hardy* (1987), Ind. App., 508 N.E.2d 1282 (evidence that easement was twenty feet wide and extended along east side of tract creating servient estate, maps explicitly demarked easement, and monuments helped fix location, held sufficient to fix exact location of the easement).

■ One further consideration compels this result. Other than the requirement that the "way" be in use at the time the lots are severed, an implied easement of

necessity may only be imposed if the servitude is reasonably necessary for the fair enjoyment of the part benefited. *Fischer v. Revett* (1982), Ind.App., 438 N.E.2d 995, 996–97, *trans. denied.* The easement was created to access the garage and parking area located at the rear of the Eastridge property. The use of the disputed area is not "reasonably necessary" for this purpose. The fact that the Eastridges' tenants occasionally parked their vehicles on the disputed area is of no consequence. Not only is parking on the easement specifically enjoined by the 1977 decree, but the parking occurred long after the larger tract was divided into the current properties. Thus, this evidence is not probative on the issue of how the driveway was used at the time of the severing conveyance. Nor can the disputed area be used for parking vehicles belonging to the parties or their guests; the 1977 decree specifically prohibits this use, and parking in the disputed area is not "reasonably necessary" for ingress and egress purposes. *See id.* at 997.

The Eastridges contend that, assuming the easement as described by the 1977 decree does not include the disputed area, the trial court should be affirmed because the Hvidstons acquiesced in its use. Our review of the judgment entered in this case reveals that the court made no finding or conclusion regarding acquiescence. Therefore, we cannot affirm the judgment on this basis. *Vanderburgh County Board of Commissioners, supra,* at 665. The Eastridges also assert that relitigation of this issue is foreclosed by the default judgment entered in 1985 on the Hvidstons' second lawsuit. Again, the trial court made no findings or conclusions in this regard; thus, this issue is not appropriate for review. *See id.* [6]

■ Lastly, the Eastridges contend that their tenants will experience difficulty in turning their vehicles around if the dis-

---

6. We note, however, that the default judgment referred to by the Eastridges affirmed the 1977 decree recognizing the implied easement of necessity. Inasmuch as the decree did not extend the easement to include the disputed area (as determined above), it would be the Eastridges,

and not the Hvidstons, who would be estopped from denying that this issue has been fully litigated. In addition, with regard to the claim of acquiescence, we merely observe that the conduct exhibited by Dean Hvidston could hardly be described in such terms.

puted area is not included in the easement. However, as the Hvidstons observe, this does not prevent the Eastridges' tenants from entering and leaving the garage and parking area. A similar situation arose in *Fischer, supra,* where the dominant estate holder used a driveway turnaround loop that overlapped the servient estate. This court concluded that the use of the loop merely provided one means to turn around rather than back out of the driveway, and that the use was more akin to convenience than to necessity. 438 N.E.2d at 998. As we stated in *Fischer:*

> A mere temporary or provisional arrangement, however, which may have been adopted by the owner for the more convenient enjoyment of the estate, can not constitute the degree of necessity or permanency which would authorize the engrafting upon a deed, by construction, of a right to the enjoyment of *something not within the lines described.* To justify such construction, it must appear from the disposition, arrangement and use of the several parts, that it was the owner's purpose in adopting the existing arrangement to create a permanent and common use ... and it must be reasonably inferable from the existing disposition and use that it was intended to be continuous, notwithstanding the severance of ownership.

*Id.* at 997 (quoting *John Hancock Mutual Life Insurance, Co. v. Patterson* (1885), 103 Ind. 582, 588, 2 N.E. 188, 191–92) (emphasis added). We agree with the Hvidstons that the use of the disputed area is more akin to convenience than to necessity. While it may be difficult to turn a vehicle around in the parking area without encroaching upon the disputed area, turning may be accomplished by either: increasing the number of turns required to maneuver through the parking area, or; enlarging the parking area by extending it to the west, into the Eastridges' backyard. The convenience currently enjoyed by the Eastridges' tenants in using the disputed area to turn their vehicles around does not translate into the reasonable necessity required for the fair enjoyment of the Eastridge property.

The trial court's conclusion that the easement includes the disputed area is clearly erroneous, and must be reversed.

## II.

### Parking on the Easement

██ As alluded to above, the 1977 decree enjoined the parties and their guests from parking on the easement. The trial court in this case, however, modified the easement to permit both parties to park on the easement for reasonable periods of time, so long as someone is available to move the vehicle upon the reasonable request of the other party. The Hvidstons contend that this modification was in error.

██ An injunction is a judgment of prospective application subject to the issuing court's continuing supervision. *Saint Joseph's Hospital of South Bend, Inc. v. Women's Pavilion of South Bend, Indiana, Inc.* (1983), Ind.App., 451 N.E.2d 1126, 1128 (citing *United States v. Swift & Co.* (1932), 286 U.S. 106, 114, 52 S.Ct. 460, 462, 76 L.Ed. 999). Ind.Trial Rule 60(B)(7) provides for relief from judgment or order when "it is no longer equitable that the judgment should have prospective application." The supervising court may modify an injunction that is overbroad or, through changed circumstances, has become an instrument of wrong. *Swift, supra; Indiana & Michigan Electric Co. v. Whitley County Rural Electric Membership Corp.* (1974), 161 Ind.App. 492, 316 N.E.2d 584. The Eastridges assert that changed circumstances justify amending the decree to permit limited parking, yet they do not identify any circumstance that has in fact changed. This is because there is no evidence in the record to support their assertion. The driveway easement continues to be used for its intended purpose, i.e., for ingress and egress. There is no showing that the injunction has become an instrument of wrong; therefore, the modification of the injunction against parking was clearly erroneous.[7]

---

7. Nothing in the 1977 decree or this opinion should be construed to prohibit the parties from

## III.

### Prohibition Against Boundary Stakes or Poles

■ Although the 1977 decree did not enjoin the Hvidstons from installing or maintaining stakes or poles of any kind along the eastern boundary of the easement, the Hvidstons claim that the trial court erroneously included such a prohibition in its order.

The Hvidstons argue that they should be allowed to install a guard rail or similar structure to prevent further harm to their property, citing one instance where the Eastridges' tenant caused damage to the apartment building by backing into a window with his car. We agree. One of the most basic rights of land ownership is the right to exclude others from entering upon the land. *See* R. Cunningham, W. Stoebuck & D. Whitman, The Law of Property § 7.1 (1984). We are aware of no decision or statute that would prevent property owners from installing an improvement of this nature on their own property. However, we are not convinced the trial court erred in this regard.

In its order, the trial court concluded:

9. Pursuant to the Decree, the Hvidstons are enjoined from obstructing, impeding, or interfering in any manner with the use and enjoyment of the driveway-easement by the [Eastridges], their successors-in-interest and assigns, their tenants, and their invitees, including,

without limitation, by installing or maintaining stakes or poles of any kind on the driveway-easement or along its boundaries.

Record, p. 392. In other words, this decree enjoins the Hvidstons from putting any stake or pole in the easement or along its boundaries that obstructs, impedes, or interferes with the use of the easement. It does not follow that the Hvidstons are thereby prohibited from putting stakes or poles on their own property (unless, as happened in the past, the stakes are placed into the ground such that they lean into the easement). Thus, the Hvidstons may erect a guardrail to protect their property, as long as the guardrail in no way interferes with the driveway easement.[8] *Cf. Kanizer v. White Excavating, Inc.* (1983), Ind.App., 444 N.E.2d 353 (owner of servient estate may maintain a gate across an easement for a right-of-way as long as the servient estate holder does not lock the gate or in any way interfere with the reasonable use of the easement).

The injunction against placing stakes and poles that interfere with the easement is not clearly erroneous.

## IV.

### Maintenance of the Easement

■ For their final issue, the Hvidstons claim the trial court erroneously ruled that only the Eastridges would be entitled to

---

stopping a vehicle in the driveway to unload groceries, pick up or drop off a tenant of either building, to unload materials used in repairing the apartment building, or similar activities lasting only a brief period. This is to be distinguished from the common meaning of "parking" that the decree enjoins; i.e., stopping and leaving a vehicle with the intent of permitting the vehicle to remain for an appreciable length of time. *See Ford v. Stevens* (1968), 280 Minn. 16, 157 N.W.2d 510.

Although it is unfortunate that we must articulate such a distinction, we are compelled to do so because of the animosity that has evidently developec between the parties to this suit. In particular, Dean Hvidston has demonstrated an exceptionally low tolerance for those using the easement. The trial court's order allowing limited parking for *reasonable* periods subject to the *reasonable* request by the other party to

move the vehicle would, in all likelihood, result in further hostilities. However, our construction of the decree and the trial court's order enjoining Hvidston from harassing the Eastridges, their tenants and invitees, should diminish the opportunities for confrontation between the parties.

8. We acknowledge that the boundaries of the easement are not precisely defined. Therefore, on remand the trial court might consider ordering the parties to hire a licensed surveyor to review the 1974 survey and to stake the eastern boundary of the easement with greater exactitude (in accordance with our resolution of Issue I, *supra* ), insuring that the boundary allows the Eastridges and their tenants ingress and egress. The cost of this service should be divided equally among the parties.

perform maintenance on the driveway easement. In its decree, the court concluded:

> 8. ... in order to minimize the likelihood of future disagreements between the parties, and so that the Pedigo–Eastridges may properly enjoy the use of the driveway-easement, the Decree should be modified and amended to provide that (a) the Pedigo–Eastridges or their successors-in-interest and assigns and tenants shall be entitled to maintain and care for the driveway-easement, including, but not limited to, properly grading the driveway-easement, filling in holes and depressions in the driveway-easement, and removing weeds and plants from the driveway-easement[.]

Record, pp. 391–92. The Hvidstons argue that, absent a provision in the 1977 decree pertaining to maintenance of the easement, both parties have the right to make reasonable repairs, alterations, and improvements to the driveway. Dean Hvidston requests at least partial responsibility for maintenance of the easement so that he may be allowed to cut a swale or trench down the middle of the driveway to drain rainwater that leaks into the basement of his apartment building and is then pumped onto his property near the eastern border of the driveway.

The owner of an easement must generally bear the entire cost of maintaining it, absent an express agreement to the contrary. *Larabee v. Booth* (1984), Ind.App., 463 N.E.2d 487, 492. "When the dominant tenant and the servient tenant both use an easement, however, the court may apportion the cost of repairs between them accordingly." *Id.* The evidence in this case reveals that the Eastridges, by their tenants, are the primary users of the easement. The "improvement" envisioned by Dean Hvidston has nothing to do with the use of the driveway easement itself; rather, he wishes to alter the easement to improve the servient estate. While the Hvidstons, as co-owners of the easement, possess "all rights necessarily incident to the enjoyment of the easement, [and] may make such repairs, improvements, or alterations as are reasonably necessary to make the grant of the easement effectual[,]" *Litzelswope v. Mitchell* (1983), Ind.App., 451 N.E.2d 366, 369, this right is limited to that which is reasonably and necessarily incident to the use of the easement, and cannot be solely for the protection of one owner's property. *Id.* at 370. Moreover, evidence adduced at trial revealed that Dean Hvidston threatened to "bulldoze" the easement, and once ordered his apartment manager to dig trenches in the direction of the Eastridges' property in order to carry water away from his building. The latter project was well underway before the Eastridges brought a halt to the work. Given these circumstances, we will not disturb the trial court's decision granting the Eastridges the sole right to maintain the driveway easement.

In conclusion, we affirm the trial court determination prohibiting the placement of stakes or poles in such a manner as to interfere with the use and enjoyment of the easement, and the decision vesting maintenance responsibilities solely in the Eastridges. We reverse the judgment insofar as it grants the Eastridges the use of the "disputed area" and allows the parties to park on the driveway easement, in contravention of the 1977 decree. We remand to the trial court for proceedings consistent with this opinion. Costs assessed 50% to the appellants and 50% to the appellees.

HOFFMAN and CONOVER, JJ., concur.

APPENDIX

*East Washington Street*

*Eastridge property*

*Kvidston Property*

*garage*

 *Boundary of Driveway from 1974 Survey*

*Disputed Area*