**Terrence HANNON, Jeffrey L. and Janet L. Hair, and Leroy and Christine Proud, Appellants,**

**v.**

**The METROPOLITAN DEVELOPMENT COMMISSION OF MARION COUNTY, Appellee.**

**No. 49A02–9605–CV–255.**

Court of Appeals of Indiana.

May 2, 1997.

Publication Ordered May 19, 1997.

Gordon L. Harger, David A. Clase, Harper, Clase & Grimmett, Indianapolis, for Appellants–Defendants.

Marguerite M. Sweeney, Assistant Corporation Counsel, Indianapolis, for Appellee–Plaintiff.

1. All of the properties involved have been zoned for single or two-family dwellings since 1922,

**OPINION**

RILEY, Judge.

### STATEMENT OF THE CASE

Defendant–Appellants, Terrence Hannon, Jeffrey L. and Janet L. Hair, and Leroy and Christine Proud (Appellants), appeal the ruling in favor of the Plaintiff–Appellee, the Metropolitan Development Commission of Marion County (Commission), resulting in an injunction against Appellants.

We affirm.

### ISSUES

The Appellants present the following restated and consolidated issues for our review:

1. Whether the trial court erred in finding that the Dwelling Districts Zoning Ordinance complied with Ind.Code 36–1–5–4.

2. Whether the trial court erred in granting the Commission injunctive relief.

### FACTS AND PROCEDURAL HISTORY

This appeal arose from four separate actions against three separate defendants. It was initiated by the Commission seeking injunctions for the violation of a zoning ordinance. In each case the use and development of the real estate at issue is governed by the Dwelling Districts Zoning Ordinance of Marion County (Ordinance) which is found within the Revised Code of the Consolidated City and County (Rev.Code), Chapter 731. The Commission sought to enjoin the Appellants from using their real estate as multi-family dwelling units in violation of the Ordinance.[1] The actions against the Prouds and the Hairs were decided on summary judgment, while the case against Hannon was decided pursuant to a bench trial. All judgments were entered June 14, 1996, and the Appellants bring this timely appeal. The undisputed facts follow.

The real estate referred to as 521 East Morris Street was converted from a single family home into a two-family home between 1951 and 1956. Then, in 1973, the house was

pursuant to 1922 and 1966 zoning ordinances.

further divided to accommodate six families. Hannon acquired this real estate on September 30, 1992, at which time it still contained six apartments. The building was later remodeled by Hannon to contain five apartments instead of six. The Commission filed this complaint on January 13, 1995. The trial was held on May 31, 1996.

The Hairs own two properties for which the Commission seek injunctions. Their real estate located at 41/43 North Hamilton Street existed as a two-family structure from 1914 until 1974, at which point it was converted into five apartments. Their property at 1106/1108 North Tacoma Avenue was converted from a two-family dwelling to a four-family dwelling in 1947. The action against the Hairs was filed on December 12, 1994, for the Tacoma Avenue house and on September 27, 1994, for the Hamilton Street building. Arguments on the summary judgments were held on June 14, 1995.

The Prouds' property at 237/239 North Beville Avenue contains three apartments and has been a multi-family dwelling since 1961. The Commission filed its complaint for injunction against the Prouds on February 27, 1995. The Commission filed a motion for summary judgment on May 31, 1995, and the Prouds on June 1, 1995. A hearing on the summary judgments was held on June 14, 1995.

The court granted the Commission's request for an injunction in all four cases. The Appellants bring this timely appeal.

### DECISION AND DISCUSSION
#### Standard of Review

One of the four cases on this appeal was decided pursuant to a bench trial; the rest were decided pursuant to a summary judgment. Because of this, we have different standards of review.

First, we will review the standard for summary judgments. The motion for summary judgment shall be granted if the trial court finds "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind.Trial Rule 56(C). Therefore, our standard of review is the same as the trial court's: whether there are no issues of material fact, and whether the moving party is entitled to judgment as a matter of law. *Dillman v. Great Dane Trailers, Inc.*, 649 N.E.2d 665, 667 (Ind.Ct.App.1995). The moving party bears the burden of establishing those two requirements for the grant of a summary judgment in their favor, while all facts are viewed in favor of the non-movant. *See Green v. Perry*, 549 N.E.2d 385, 387 (Ind.Ct.App.1990), *reh'g denied, trans. denied.*[2]

Next we will address the appropriate standard of review for Hannon's appeal which was decided pursuant to a bench trial. Because the trial court entered findings of fact and conclusions of law along with its judgment, the applicable standard of review is found in Ind.Trial Rule 52(A). "On appeal of claims tried by the court without a jury ... the court on appeal shall not set aside the findings or judgment unless clearly erroneous...." T.R. 52(A). In reviewing such a judgment, we must first determine whether the evidence supports the findings, and then whether the findings support the judgment. *Hvidston v. Eastridge*, 591 N.E.2d 566, 568 (Ind.Ct.App.1992); *Gunderson v. Rondinelli*, 677 N.E.2d 601, 603 (Ind.Ct.App.1997). "To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility." *Hvidston*, 591 N.E.2d at 568; *see Gunderson*, 677 N.E.2d at 603.

#### I. Validity of the Ordinance

In order to sustain a suit for an injunction against the land owners preventing the current use of the property, the Commission must show proof of a valid ordinance and evidence establishing a violation of that

**2.** Here, both appellants and appellee moved for a summary judgment. "The fact that the parties make cross-motions for summary judgment does not alter our standard of review. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *Hendricks County Bank & Trust Co. v. Guthrie Bldg. Materials, Inc.*, 663 N.E.2d 1180, 1183 (Ind.Ct.App.1996), *reh'g denied, trans. denied.*

ordinance. *Harbour Town Associates v. No-blesville*, 540 N.E.2d 1283, 1284 (Ind.Ct.App. 1989). In challenging the validity of the Ordinance, the Appellants question whether or not the trial court was correct in finding that the Ordinance complied with Ind.Code 36–1–5–4.[3]

Ind.Code 36–1–5–4 requires the inclusion of specific language in order to incorporate material into an ordinance or code by reference.

> The legislative body of a unit may incorporate by reference into an ordinance or code any material. The ordinance or code must state that two (2) copies of the material are on file in the office of the clerk for the legislative body for public inspection, and the copies must be on file as stated for public inspection.

Ind.Code 36–1–5–4. The exact language required by Ind.Code 36–1–5–4 is not contained within the Ordinance; however, it is within the encompassing Rev.Code. The parties disagree on whether this is sufficient compliance with the statute to uphold the Ordinance.[4]

■ Ind.Code 36–1–5–4 requires the necessary language to be in the ordinance *or* the code. Therefore, the trial court's interpretation allowing the language to be in the Rev.

Code instead of the Ordinance is not clearly erroneous. We uphold the trial court's ruling. Additionally, there is no issue of material fact; the Appellants' buildings violate the ordinance. Therefore, the Commission is entitled to the injunction as a matter of law. The required language is found within the Rev.Code in compliance with the statute; therefore, the Ordinance is valid.[5]

■ The Appellants argue that this application of the statute frustrates the legislative purpose behind the statute. However, when interpreting a statute the words and phrases in a statute are to be given their plain, ordinary, and usual meaning unless a contrary purpose is clearly shown by the statute itself. *Saurer*, 629 N.E.2d at 897. Additionally, statutes relating to the same subject matter should be construed together in order to produce a harmonious statutory scheme. *Wilburn v. State*, 671 N.E.2d 143, 147 (Ind.Ct.App.1996), *trans. denied.*[6] Although it is true that we must look to legislative intent when construing a statute with ambiguous language, "[i]f the language of a statute is clear and unambiguous it is not subject to judicial interpretation." *Town of Merrillville*, 649 N.E.2d at 649. The language of the statute here is clear and unam-

**3.** A local legislative body has the authority to enact zoning ordinances and amendments thereto only as it has been delegated to it by the enabling statutes.... Certain procedures have been specifically and expressly set forth by the Indiana General Assembly and must be followed for the enactment of a valid zoning ordinance.... Further, this Court has stated that the procedures set forth in the enabling statute must be complied with, and that a failure to do so would render the zoning ordinance void.
*Town of Beverly Shores Plan Comm'n v. Enright*, 463 N.E.2d 246, 248 (Ind.1984).

**4.** In addressing this question the trial court found:
The incorporation of zoning base maps into the Dwelling Districts Zoning Ordinance by reference without restating the exact language prescribed by I.C. § 36–1–5–4, does not invalidate the Dwelling District Zoning Ordinance. Incorporation of maps in any part of the Revised Code is provided for in Rev.Code, Chapter 101, § 101–6.
("Findings of Fact, Conclusions of Law, and Judgment," pg. 4).

**5.** The appellants argue for strict compliance to the statute. Although the need for strict compliance is correct, *Saurer v. Board of Zoning Appeals*, 629 N.E.2d 893, 897 (Ind.Ct.App.1994) (ordinances which limit the free use of real property are in derogation of the common law and must be strictly construed in favor of the free use of land), this decision is not founded on a substantial compliance argument, but that the language in the Rev.Code does bring the Ordinance into strict compliance.

**6.** Statutory provisions ... must be construed in light of the entire act of which they are a part. When the legislature enacts a statute, we presume it is aware of existing statutes in the same area. When construing an ordinance, we apply these rules of construction. Ordinances should be interpreted so as to uphold their validity whenever possible.
*Town of Merrillville v. Merrillville Conservancy Dist.*, 649 N.E.2d 645, 649 (Ind.Ct.App.1995), *reh'g denied.*

biguous, therefore we do not need to examine how well it serves its purpose.

## II.   Grant of Injunctive Relief

The Appellants argue that the Commission should be enjoined from enforcing the Ordinance. Multiple reasons are given to support their request for an injunction against the enforcement of the Ordinance. Appellants asserted the defense of laches, equitable estoppel, and valid nonconforming use of the property. The trial court did not err in finding that the Commission was not enjoined from enforcing the Ordinance.

### A.   Laches

■ Appellants suggest that the court should change the well established law in Indiana and apply the doctrine of laches to prevent the enforcement of the Ordinance. The equitable doctrine of laches has been defined as:

> the neglect for an unreasonable or unexplained length of time, under circumstances permitting diligence, to do what in law should have been done. It is an implied waiver arising from knowledge of existing conditions and an acquiescence in them, the neglect to assert a right, as taken in conjunction with the lapse of time, more or less great, and other circumstances causing prejudice to the adverse party and thus operating as a bar in a court of equity.

*Harbour Town Associates,* 540 N.E.2d at 1286 (quoting *Perry v. State,* 512 N.E.2d 841,

842 (Ind.1987), *reh'g denied*).   However, *Harbour Town* also holds that the doctrine of laches is never applicable to a municipality in enforcing its ordinances because of public policy interests.   540 N.E.2d at 1286; *see Wesner v. Metropolitan Dev. Comm'n of Marion County,* 609 N.E.2d 1135, 1137 (Ind. Ct.App.1993).   Therefore, Appellants' argument that the Commission is barred from enforcing its ordinance because of the equitable doctrine of laches fails.[7]

### B.   Equitable Estoppel

■ Appellants also argue that the Commission should be estopped from enforcing the ordinance. The doctrine of equitable estoppel is very similar to laches with the exception of one fundamental difference. The party asserting equitable estoppel claims that he acted in reliance upon some affirmative action taken by the municipality; but when claiming the defense of laches, the asserting party claims he was prejudiced by the municipality's inaction.   *Harbour Town Associates,* 540 N.E.2d at 1287, 1288.   Equitable estoppel cannot ordinarily be applied against government entities.   The exception to this rule is if the public interest would be threatened by the government's conduct.[8]   *Wesner,* 609 N.E.2d at 1137, n. 2.

■ In order to support the equitable estoppel claim against the Commission, the appellants must show their "(1) lack of knowledge and of the means of knowledge as to the facts in question, (2) reliance upon the

---

**7.**  Although Appellants encourage us to carve out an extreme circumstance exception to this well established rule, we do not find their argument persuasive. In their argument they explain how allowing the Commission to enforce the Ordinance is inequitable to the property owners. Appellants present a similar argument for the use of the doctrine of equitable estoppel against the Commission. Therefore, we address these policy issues together in footnote eight.

**8.**  Appellant's claim that a public interest is threatened and that the equitable estoppel or laches claim should be considered. Appellant cites the public interests threatened as the potential displacement of the residents in the nonconforming property and the public's loss of the units of housing. The threat to the public if this were to happen seems minimal when compared to the public interests served by barring equitable estoppel and laches defenses against zoning vio-

lations. *See Harbour Town,* 540 N.E.2d at 1287 (citing multiple public interest and equitable reasons not to allow estoppel or laches arguments when enforcing zoning ordinances including: the purpose of zoning is to protect the public interest; zoning regulations are created pursuant to the political process; a particular city representative cannot waive the public's right to enforce the ordinance; the wrongdoer brought his condition on himself; and allowing a balance of equities when enforcing violations would encourage violations and greatly debilitate any zoning policy). The hardship to the land owners does not outweigh the public interest concerns that gave rise to the bar of the laches and estoppel defenses initially. However, instead of participating in a balancing of the equities, we will discuss the more specific elements of the equitable estoppel argument itself.

conduct of the party estopped, and (3) action based thereon of such a character as to change his position prejudicially." *Harbour Town,* 540 N.E.2d at 1288 (quoting *City of Crown Point v. Lake County,* 510 N.E.2d 684, 687 (Ind.1987)). Appellants' claim fails on two of these three elements.

■■■■ First, "[p]ersons owning property within a state are charged with knowledge of relevant statutory provisions affecting the control or disposition of such property. This rule applies with equal force to the provisions of zoning ordinances which affect an individual's property." *Wesner,* 609 N.E.2d at 1137, n. 2. ("estoppel cannot be applied if the facts are equally known by or accessible to both parties"). Therefore, Appellants do not have a lack of knowledge as to the fact that their buildings are in violation of the Ordinance and have not met the first element of an equitable estoppel claim.

In addressing the second element, the trial court found there was no sufficient action by the Commission to induce Appellants' reliance for the purposes of equitable estoppel. Appellants cite the city's acceptance of their higher property tax payments based on the actual use of the property as the affirmative action of the Commission upon which they detrimentally relied. The trial court held: "The doctrine of estoppel does not apply, since there is no fact established showing any affirmative action taken by the Plaintiff upon which Defendant's [sic] relied in maintaining their non-conforming use." ("Findings of Fact, Conclusions of Law, and Judgement," pg. 5).

■■■ In *Paramo v. Edwards,* 563 N.E.2d 595 (Ind.1990), our supreme court discussed what was required for an event to become an affirmative act for the purposes of equitable estoppel. The Court held that although active false representation or concealment are no longer required, the conduct must be of such character as to prevent inquiry or to elude investigation or to mislead and hinder. *Id.* at 599. There is some evidence in the record that each of the Appellants paid taxes on their property as it existed, rather than as it was zoned. The trial court's finding that receiving and accepting a tax payment does not reach the level of an affirmative action upon which Appellants could support their estoppel claim is not clearly erroneous, nor is there an issue of material fact which would preclude judgment as a matter of law.[9]

### C. Valid Nonconforming Use

■■ Finally, Appellants claim that the multi-family dwelling units are a valid nonconforming use of the property, and therefore the trial court erred in failing to enjoin the Commission from enforcing the Ordinance. "The use of land or buildings may be protected from existing zoning restrictions if the use is one which existed and was lawful when the restrictions became effective and which continued to exist since that time. This nonconforming use is an affirmative defense which must be proven by the party asserting it." *Metropolitan Dev. Comm'n of Marion County v. Goodman,* 588 N.E.2d 1281, 1285 (Ind.Ct.App.1992).

Appellants base this claim on the premise that there was effectively no zoning in Marion County prior to the current ordinance which was enacted in 1989, and therefore, before this ordinance their buildings were not violating any zoning laws and have continued to exist since that time. Appellants support their claim that zoning in Marion County effectively originated in 1989 by citing Ind.Code 1–1–5–8 along with *Parr v. Paynter,* 78 Ind.App. 639, 642, 137 N.E. 70, 71 (1922) (holding that "the repeal of a statute without a saving clause, where no vested right is impaired, completely obliterates it, and renders the same as ineffective as if it had never existed").

---

9. Appellants cite *Board of Zoning Appeals of Valparaiso v. Beta Tau Hous. Corp.,* 499 N.E.2d 780 (Ind.Ct.App.1986), to support their claim of equitable estoppel against the enforcement of a zoning ordinance. However, that case is easily distinguishable in that the enforcing board had actual knowledge of the fraternities' existence in violation of the zoning regulations, and furthermore granted the fraternity a special exception before attempting to enforce the zoning regulation. *Id.* at 782. The fact that the city accepted the property tax payments is not equivalent to actually granting a special exception to the non-complying property.

Although there is no case law on Ind.Code 1–1–5–8,[10] we believe that Appellants have misinterpreted the statute. This statute prohibits the revival of a law which has been voided by a later law which was subsequently repealed. It prevents the originally voided law from becoming current law; it does not prohibit the original law's application to events that transpired when it was a valid law.[11]

This position is supported by *Martin v. Simplimatic Eng'g Corp.*, 181 Ind.App. 10, 390 N.E.2d 235 (Ind.Ct.App.1979), *reh'g denied*, which recognizes that the common law rule stated in *Parr* and cited by Appellants is tempered by Ind.Code 1–1–5–1 which governs the effect of a repealed statute. *Id.* at 236. Ind.Code 1–1–5–1 states:

> Whenever a statute is repealed which repealed a former statute, the former statute shall not thereby be revived unless it shall be so expressly provided. And the repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing statute shall so expressly provide; and such statute shall be treated as still remaining in force for the purposes of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

Ind.Code 1–1–5–1.

Our interpretation is also supported by the purposes behind a zoning ordinance and the nonconforming use exception. "[N]onconforming uses are not favored since they detract from the purpose of a zoning ordinance, namely: (a) to restrict certain classes of uses to certain areas, (b) to secure the gradual elimination of nonconforming uses and, (c) to restrict or diminish such uses." *Metropolitan Dev. Com'n*, 588 N.E.2d at 1287. We agree with the trial court in that interpreting the statute as Appellants suggest would greatly hinder the intent behind zoning regulations.

The method for establishing nonconforming use is well settled in Indiana. Appellants must prove that the homes were being used as multi-family dwellings prior to the original 1922 zoning ordinance, because every ordinance since that point has contained a restriction against such use. *See Metropolitan Dev. Comm'n of Marion County v. Hair*, 505 N.E.2d 116, 117 (Ind.Ct.App. 1987) (dealing with the same plaintiff and the existence of nonconforming multi-family dwelling units under the Marion county zoning ordinances). Appellants have not met this burden of proof. Therefore, the trial court did not err in refusing to enjoin the Commission from enforcing the Ordinance.

## CONCLUSION

The trial court did not err in finding that the existence of the required language within the Rev.Code brings the Ordinance into compliance with the relevant statutes. Additionally, the equitable doctrines of laches and estoppel are not applicable here to prevent the enforcement of the Ordinance, and the Appellants did not show their property fell under the nonconforming use exception. Therefore, the trial court did not err in granting the injunction against Appellants.

Affirmed.

KIRSCH, J., concurs.

CHEZEM, J., concurs in result.

## ORDER

This Court having heretofore handed down its opinion in this appeal on May 2, 1997 marked "Memorandum Decision, Not for Publication"; and

Comes now the appellee, by counsel, and files its Motion to Publish Memorandum Decision, alleging, *inter alia*, that the decision establishes the inapplicability of the doctrine of equitable estoppel in a case where a mu-

---

**10.** Ind.Code 1–1–5–8 states: "Whenever a statute is repealed that voided a rule, the rule is not revived unless the statute expressly provides for the revival."

**11.** "A repealing clause is to be interpreted as any other enactment, and the legislative intent will prevail over the literal import of the words.... In the construction of a statute, even an express declaration of a repeal will not be given that effect when it is apparent that the legislature did not so intend." *FGS Enter., Inc. v. Shimala*, 625 N.E.2d 1226, 1228–1229 (Ind.1993), *reh'g denied.*

·nicipality collected property taxes while the property owner was violating a zoning ordinance and that the decision helps to clarify the meaning of the abstract concept of equitable estoppel and apply it to unique, concrete facts, and prays the Court to order its Memorandum Decision to be published, which said Motion is in the following words and figures, to-wit:

(H.I.)

And the Court, having examined said Motion and being duly advised, now finds that the appellee's Motion to Publish Memorandum Decision should be granted and this Court's opinion in this appeal should now be ordered published.

IT IS THEREFORE ORDERED as follows:

1. The appellee's Motion to Publish Memorandum Decision is granted and this Court's opinion heretofore handed down in this cause on May 2, 1997 marked "Memorandum Decision, Not for Publication" is now ordered published.