Robin L. VUKOVITS, Appellant–Plaintiff,

v.

**BOARD OF SCHOOL TRUSTEES OF THE ROCKVILLE COMMUNITY SCHOOL CORPORATION and Richard A. Schelsky, Individually and in his capacity as Superintendent of the Rockville Community School Corporation, Appellees–Defendants.**

No. 61A01–9502–CV–43.

Court of Appeals of Indiana.

Dec. 12, 1995.

Rehearing Denied March 15, 1996.

Richard J. Darko, Mary Jane LaPointe, Lowe Gray Steele & Hoffman, Indianapolis, for appellant.

Briane M. House, Eric D. Johnson, Kightlinger & Gray, Indianapolis, for appellees.

## OPINION

BAKER, Judge.

Appellant-plaintiff Robin L. Vukovits appeals a judgment in favor of appellees-defendants Board of School Trustees of the Rockville Community School Corporation and Richard A. Schelsky, Individually and in his capacity as Superintendent of the Rockville Community School Corporation, (collectively School Board) on her claim for improper nonrenewal of her teacher's contract. Vukovits contends the trial court erred in finding the School Board did not violate various statutory and contractual procedures when refusing to renew her contract. Specifically, she argues the School Board violated: 1) IND. CODE § 20-6.1-4-14(b), which contains the due process provisions of the Teacher Tenure Act,[1] 2) IND.CODE § 20-6.1-9-3, the Staff Performance Evaluation Statute, and 3) the master contract between the School Board and the teacher's union.

## FACTS

The facts most favorable to the judgment reveal that Vukovits was employed by the Rockville Community Schools for the 1990–91 and 1991–92 school years. Throughout both years, Vukovits taught physical education and coached tennis and volleyball. Pursuant to the Teacher Tenure Act, Vukovits was employed as a non-permanent teacher.

During Vukovits' first year of teaching, John Pietrzak, the principal of the school at which Vukovits taught, evaluated her on January 14, 1991. This evaluation was generally favorable. Pietrzak also met with Vukovits to discuss her evaluation. During her second year, Vukovits was evaluated by Pietrzak and Assistant Principal Carolyn Cochren on December 13, 1991. Again, these evaluations were generally favorable. Vukovits received copies of both Cochren's and Pietrzak's written evaluations to which a form entitled "Teacher Reaction to Classroom Observation" was attached. On the form attached to Pietrzak's evaluation, Vukovits answered the question "Have you requested any assistance or help with your classroom responsibilities?" by checking "yes," and writing "I asked Mr. Pietrzak to observe me as much as he could in the future." Record at 940. Vukovits again met with Pietrzak to discuss her evaluation, at which time she orally requested Peitrzak to observe her more often.

On April 21, 1992, Pietrzak again evaluated Vukovits. The next day, prior to receiving the results of that evaluation, Vukovits was notified that the School Board would determine whether it would renew her teaching contract at its meeting that night. At that meeting, the School Board voted not to renew Vukovits' contract. After being notified of the Board's decision, Vukovits requested a written statement, pursuant to IND.CODE § 20-6.1-4-14, of the School Board's reasons for not renewing her contract. This statement provided that Vukovits' contract was not renewed because:

1. The staffing of the instructional program could be improved by replacing you with another teacher....

2. Your lack of acceptance by and compatibility with the total school community....

---

1. IND.CODE §§ 20-6.1-4-1 to 20-6.1-4-14.5.

3. The use of poor judgement by you in school situations.

R. at 952. Vukovits also requested and received a conference with Superintendent Schelsky regarding the Board's decision, at which time she requested the School Board to reconsider its decision. When the School Board refused to change its decision, Vukovits filed a lawsuit on September 10, 1993, alleging that the School Board had failed to follow proper procedures in deciding not to renew her contract, and seeking reinstatement and back pay.

Vukovits' complaint contained four counts, alleging the School Board violated: 1) I.C. § 20–6.1–4–14(b), the Due Process Statute, 2) I.C. § 20–6.1–9–3, the Staff Performance Evaluation Statute, 3) a School Board policy, and 4) the master contract between the School Board and its teachers.[2] On March 24, 1994, the trial court granted partial summary judgment in favor of the School Board on count three of the complaint, which alleged violations of a School Board policy.

Following a bench trial, on October 28, 1994, the trial court entered findings of fact and conclusions of law granting judgment in favor of the School Board on Vukovits' remaining three counts. Specifically, the trial court determined that the School Board had not violated the master contract or the due process provisions of the Teacher Tenure Act. Further, as to count two, the court found that although Pietrzak did not comply with the Staff Performance Evaluation Statute, the fact that Vukovits may not have received her evaluation in a timely manner did not bar the non-renewal of her contract because her evaluations were not the dispositive factor in the School Board's decision not to renew her contract.

## DISCUSSION AND DECISION

### I. Standard of Review

■ When the trial court enters findings of fact and conclusions of law pursuant to a request by one of the parties, our standard of review is limited to a determination of whether the judgment is clearly erroneous. Ind.Trial Rule 52(A). We first determine whether the evidence supports the findings, and then whether the findings support the judgment. *Vanderburgh County Board of Commissioners v. Rittenhouse* (1991), Ind. App., 575 N.E.2d 663, 665, *trans. denied.* The trial court's findings are clearly erroneous if the record is devoid of any facts or reasonable inferences to support them. *Id.* We consider only the evidence most favorable to the judgment and the reasonable inferences flowing therefrom; we will not reweigh the evidence or assess witness credibility. *Id.*

### II. Due Process Statute

■ Vukovits first contends the trial court erred in finding that the School Board did not violate I.C. § 20–6.1–4–14(b), the Due Process Statute, in its refusal to renew her contract. I.C. § 20–6.1–4–14(b) provides in pertinent part:

Before a teacher is refused continuation of the contract under subsection (a), the teacher has the following rights, which shall be strictly construed:

. . . . .

(2) The principal of the school at which the teacher teaches, shall provide the teacher with an annual written evaluation of the teacher's performance before January 1, of each year. Upon the request of a nonpermanent teacher, delivered in writing, to the principal within thirty (30) days after the teacher receives the evaluation required by this section, the principal shall provide the teacher with an additional written evaluation.

Vukovits argues that she requested an additional evaluation pursuant to this section, but that she did not receive this evaluation prior to the School Board's decision not to renew her contract as the statute requires. Thus, she argues the School Board deprived her of due process. We disagree.

In order to invoke the procedures set out in I.C. § 20–6.1–4–14(b), a teacher must sub-

---

**2.** On July 23, 1993, Vukovits amended her complaint to include a fifth count which alleged violations of Indiana's Open Door Law. IND. CODE §§ 5–14–1.5–1 to 5–14–1.5–8. However, during trial, Vukovits voluntarily dismissed that count of her complaint.

mit a written request for an additional evaluation to the principal within 30 days of the initial evaluation. Vukovits contends that her written response on the teacher reaction form asking that the principal observe her more often constituted a request for an additional evaluation. Vukovits posits that because the teacher reaction form was added to the evaluation pursuant to the Staff Performance Evaluation Statute which requires schools to provide a means for teachers to request follow-up evaluations, use of the form automatically constitutes a request for further evaluation under the Due Process Statute. Although Vukovits is correct that teachers may use the reaction form to request an additional evaluation, we do not believe that her request to be observed as often as possible invoked the Due Process Statute.

In its findings of fact and conclusions of law, the trial court stated that there is a difference between an observation and an evaluation. While an observation can contain some evaluative aspects, it is not necessarily the same as the school's formal evaluation process. R. at 425. Thus, Vukovits' request to be observed did not necessarily constitute a request for an additional formal evaluation. This finding is consistent with the testimony of Principal Pietrzak, who stated in his deposition that he did not consider an evaluation and an observation to be the same thing.

Q: What's the difference?
A: An observation is one which you see is going on and you don't necessarily have to make comments. An evaluation is a process, a formal written process.

R. at 425. Moreover, the trial court specifically found that Vukovits was unaware of her rights under I.C. § 20–6.1–14–4(b) at the time she completed the reaction form. R. at 790. Thus, it is disingenuous for Vukovits to now argue that in completing the reaction form she did in fact intend to request an additional evaluation pursuant to the statute. Based upon the evidence presented, we cannot say the trial court's determination that Vukovits did not request an additional evaluation is clearly erroneous.

Even if we were to determine that Vukovits' use of the teacher reaction form constituted a request for an additional evaluation, we would still be compelled to find that the school properly complied with her request. On April 21, 1992, prior to the School Board's consideration of her contract renewal, Vukovits was observed and evaluated by Pietrzak. Nonetheless, Vukovits argues that this evaluation did not comply with I.C. § 20–6.1–14–4(b) because it did not serve an evaluative purpose, in that she did not have an opportunity following the evaluation to consider the principal's comments and make improvements.[3] Vukovits is mistaken.

I.C. § 20–6.1–14–4(b) requires a principal to reevaluate a teacher upon the teacher's written request. The statute does not provide the purpose of this reevaluation; nor does it provide time limits in which this evaluation should be completed. On the contrary, the statute merely mandates that the evaluation be performed "before a teacher is refused continuation of the contract . . ." Because Vukovits received her second evaluation prior to the non-renewal of her contract, the School Board complied with the statute. The trial court's determination that the School Board complied with I.C. § 20–6.1–14–4(b), therefore, was not clearly erroneous.

*III. Staff Performance Evaluation Statute*

Next, Vukovits argues the School Board failed to comply with I.C. § 20–6.1–9–3, the Staff Performance Evaluation Statute. According to this statute, schools are required to develop a plan to evaluate the performance of each certified employee.

---

3. Vukovits also argues that the trial court erred in holding that the School Board's substantial compliance with the statutory provisions of the Due Process Statute was sufficient to support the non-renewal of her contract. In 1989, the Due Process Statute was amended to add language that the rights granted to teachers under the statute should be strictly construed. This language overruled our decision in *Moran v. Board* *of School Trustees* (1986), Ind.App., 501 N.E.2d 472, in which we held that the school board was only required to substantially comply with I.C. § 20–6.1–14–4(b)(2). Thus, Vukovits is correct that substantial compliance is not sufficient and that the trial court's finding was erroneous. However, our determination that the School Board fully complied with the Due Process Statute renders this error harmless.

IND.CODE § 20–6.1–9–2. The statute dictates the necessary content of the plans, including provisions for "the improvement of the performance" and "the growth and development" of the individuals evaluated. I.C. § 20–6.1–9–3. Additionally, the plan:

> must provide that nonpermanent and semi-permanent teachers:
>
> (A) receive an evaluation on or before December 31 each year; and
>
> (B) if requested by that teacher, an additional evaluation on or before March 1 of the following year.

*Id.* Vukovits first argues that because she orally requested an additional evaluation, the school was mandated by the statute to provide an additional evaluation before March 1. Because she did not receive this additional evaluation until April 21, she contends the School Board violated the statute, and the non-renewal of her contract was improper. Second, Vukovits argues that the School Board violated the statute's requirement that the plan provide for teachers' continued improvement, growth, and development because the Board voted not to renew her contract immediately following her second evaluation, without giving her the opportunity to study and learn from the evaluation.

Assuming that Vukovits did orally request an additional evaluation, she is correct that the School Board did not explicitly follow the mandates of the Staff Performance Evaluation Statute when it failed to reevaluate her prior to March 1.[4] The trial court found, however, that this error was immaterial considering the School Board's stated reasons for voting not to renew her contract. The trial court stated:

> Moreover, there is no indication in the record that evaluations of Plaintiff were the dispositive factor in deciding not to renew Plaintiff's contract. Mr. Pietrzak was generally satisfied with the Plaintiff's teaching performance. The testimony of

Board members demonstrates that the concerns of the Board did not specifically focus upon teaching performance, but rather upon the Plaintiff's "fit" with the school community which include parents and students.

R. at 794. On appeal, we are limited to determining whether the evidence before the trial court supported this finding and whether the finding supports the judgment. *Rittenhouse*, 575 N.E.2d at 665.

At trial, several members of the School Board testified regarding the decision not to renew Vukovits' contract. In addition to discussing her evaluations, the Board members testified regarding several incidents which caused them to question Vukovits' judgment. For example, several Board members had received complaints that Vukovits had changed the location of a volleyball practice and left a note for the players posted on a feminine sanitary napkin. R. at 449, 516–17, 995, 1200–01. These players, fearing that if they were late to practice they would not be able to play volleyball, were then required to travel approximately ten miles to the practice site. R. at 516, 1200. One parent informed a School Board member that she had seen her child and several others leaving the school at a dangerous rate of speed in order not to be late to practice. R. at 516–17, 1200.

Additionally, an incident was reported to Board members in which Vukovits locked several players out of the school gym for a practice. R. at 518, 1023–24, 1211. Board members were also informed that Vukovits did not honor notes from doctors excusing students from physical education class, but instead required students to participate in physical education. R. at 1252–52, 1269, 1274. Finally, several Board members commented on Vukovits' inability to get along with students, parents and other staff members. R. at 1209, 1240, 1257, 1270. Based on this testimony, we find the evidence sup-

---

4. Our finding that the School Board was required pursuant to the Staff Performance Evaluation Statute to have procedures for reevaluating teachers prior to March 1 and that the School Board did not explicitly follow this plan in reevaluating Vukovits is not a concession that the School Board's error gave rise to a claim for Vukovits. Nor is this finding a concession that

I.C. § 20–6.1–9–3 adds provisions to the Due Process Statute, which sets forth the proper procedures for terminating a nonpermanent teacher's contract. Although the schools are bound to follow the Staff Performance Evaluation Statute, there is no indication that it is intended to give teachers a private cause of action or remedy for non-renewal of their contracts.

ported the trial court's determination that the School Board had sufficient reasons beyond Vukovits' classroom evaluations for voting not to renew her contract. We also agree that Vukovits did not suffer any harm as a result of the School Board's error in not expressly following the Staff Performance Evaluation Statute. Thus, the trial court did not err.

### IV. Master Contract

Finally, Vukovits challenges the School Board's decision not to renew her contract on the basis of the master contract between the School Board and the employee bargaining unit. Specifically, Vukovits argues the School Board violated the following four provisions of the contract:

1. Preliminary evaluations of first (1st) year teachers should be concluded during the first (1st) one-half (½) of the school year in order that teachers who have weak areas shall have sufficient time to make corrections.

2. The evaluator shall give positive assistance to those teachers having professional difficulty.

3. The evaluation of teacher performance contained herein does not include the evaluation of extra-curricular positions.

4. Teachers shall be notified whenever any statement which is critical of them is made at a public board meeting. The board shall not take any action concerning a teacher in an open meeting without prior notice to the teacher....

Vukovits contends the trial court failed to adequately address these alleged contract violations.

### A. Preliminary Evaluations

■ First, Vukovits argues the School Board violated the provision of the master contract requiring preliminary evaluations to be performed within the first one-half of the school year. During her first year of teaching, Vukovits was evaluated by Pietrzak and given written comments on January 14, 1991. Vukovits contends the date of this evaluation clearly indicates the School Board violated the provisions of its master contract. In response, the trial court found in its conclusions of law that "[t]he fact that [Vukovits] may not have received at least one evaluation in a timely fashion will not bar the nonrenewal of her contract." R. at 794. The trial court went on to find that Vukovits' evaluations were not the reason her contract was terminated, and thus, any error by the School Board in performing those evaluations was immaterial. We agree.

As the trial court found, Vukovits' contract was not renewed primarily because of her behavior during extra-curricular activities. Although some Board members admitted they considered Vukovits' evaluations in making their decision, they all agreed it was not the dispositive factor. Vukovits has failed to demonstrate how the school's failure to evaluate her in a timely manner during her first year caused her harm. Thus, we agree with the trial court that the school's delay will not bar the non-renewal of her contract.

### B. Positive Assistance

■ Next, Vukovits argues the School Board failed to follow the provision of the master contract requiring the evaluator to give positive assistance to those teachers having professional difficulty. Specifically, she claims that the timing of Pietrzak's second evaluation could not, as a matter of law, have provided her with any positive assistance, and that the evidence at trial demonstrates she was not given any assistance. In contrast, the trial court found that according to the testimony of Pietrzak and Cochren, Vukovits was given positive assistance. R. at 791.

Our review of the record reveals that Vukovits was evaluated by Pietrzak on January 13, 1991, by Pietrzak and Cochren on December 13, 1991, and by Pietrzak on April 21, 1992. Following each evaluation, Vukovits met with the evaluators to discuss areas in which she needed to improve. Additionally, Pietrzak met with Vukovits to discuss the various incidents which occurred during extra-curricular activities and Vukovits' need to use better judgment. Based on this evidence, we cannot say the trial court's deter-

mination that Vukovits received positive assistance was clearly erroneous.

## C. Extra-curricular Positions

■ Next, Vukovits claims the School Board improperly considered her extra-curricular activities in deciding whether to renew her contract in violation of the master contract. Specifically, Vukovits argues it is inconsistent for the master contract to prohibit evaluators from commenting on extra-curricular activities, yet allow those same activities to form the basis for the non-renewal of a contract. We disagree.

I.C. § 20–6.1–4–14, the Due Process Statute, provides that a nonpermanent teacher's contract can be terminated "for any reason considered relevant to the school corporation's interest." For this reason, although the master contract prohibits consideration of extra-curricular activities in a teacher's evaluation, the School Board is permitted to consider those activities when determining whether to continue the contract of a non-permanent teacher. To hold otherwise would place extra-curricular activities outside the realm of discipline, for misbehavior during such activities could never form the basis for a teacher's termination. This result would be inconsistent with settled Indiana policy and statute, which places decisions regarding the retention of teachers within the "unfettered discretion of the School Board." *Tishey v. Board of School Trustees* (1991), Ind.App., 575 N.E.2d 1018, *trans. denied* (where proper procedure has been followed, the School Board's decision of non-renewal is final and is not subject to review). As a result, we must affirm the trial court's finding that the master contract does not prohibit Board members from considering a teacher's extra-curricular activities in making employment decisions.

## D. Statements at Public Board Meetings

■ Finally, Vukovits argues she was not informed of complaints made by parents about her at public board meetings in violation of the master contract, and that the trial court failed to address this argument in its findings of facts and conclusions of law. Specifically, Vukovits contends that Board members stated that part of their decision not to renew her contract was based on complaints that had been presented at prior Board meetings regarding Vukovits' grading scale, and that she was never notified of these complaints.

■ Generally, the trial court is required, upon request by one of the parties, to find the facts specially and state its conclusions thereon. T.R. 52(A). The court's failure to enter findings upon a material issue for which a finding is required can be challenged for incompleteness or inadequacy. T.R. 52(B) and (D). When the issue is immaterial or incidental, however, the trial court's failure to enter special findings does not amount to error. *Pepka v. Branch* (1973), 155 Ind. App. 637, 667, 294 N.E.2d 141, 158. In the instant case, the testimony presented at trial renders the issue of the School Board's failure to notify Vukovits of complaints made at Board meetings immaterial.

At trial, although some Board members indicated that they recalled an incident in which complaints had been made about Vukovits' grading scale, none of the members testified that Vukovits was terminated for that reason. On the contrary, each member testified that Vukovits' contract was not renewed because her teacher's license, which was limited to physical education, did not give her the flexibility she needed to be versatile in the school system, she was not accepted by the school community, and she had displayed poor judgment during extra-curricular activities. Thus, notification to Vukovits of complaints regarding her grading scale would not have affected her ultimate termination.

Moreover, those Board members who testified regarding complaints about Vukovits' grading scale also testified that the issue was one of school policy, and not of her teaching ability. The parents who had complained were concerned because students were being graded according to their talent, and not their effort, which was having a detrimental effect on the grade point average of non-athletic students. In response, the School Board decided not to include students' grades for physical education in their grade

point average, and to reduce the credit for physical education to one-half of a full credit. These decisions by the School Board concerned school policy and not necessarily Vukovits' teaching ability. Therefore, the School Board was justified in determining that the provisions of the master contract requiring notification to teachers of complaints had not been invoked, and it was not necessary for the trial court to enter specific findings on this issue.

In conclusion, we find that the School Board did not violate the due process provisions of the Teacher Tenure Act in deciding not to renew Vukovits' contract for the 1991–92 school year. We also find that the Board sufficiently complied with the provisions of the Staff Performance Evaluation Statute and the master contract, and that any incidents of non-compliance were not material to the Board's ultimate decision.

Judgment affirmed.

NAJAM and GARRARD, JJ., concur.