Mark Lee GUNDERSON, Appellant–
Defendant,

v.

Thomas J. RONDINELLI and Jane T.
Rondinelli, Appellees–Plaintiffs.

No. 50A04–9607–CV–301.

Court of Appeals of Indiana.

March 17, 1997.

David R. Holmes, Holmes, Hayes & Walter, Plymouth, for Appellant–Defendant.

Fred R. Jones, Jones & Huff, Plymouth, for Appellees–Plaintiffs.

**OPINION**

RILEY, Judge.

### STATEMENT OF THE CASE

Defendant–Appellant Mark Gunderson (hereinafter "Gunderson") appeals from the trial court's entry of judgment in favor of Plaintiffs–Appellees Thomas and Jane Rondinelli (hereinafter collectively "Rondinelli"), and permanent injunction prohibiting Gunderson from exercising certain conduct upon a tract of land subject to an easement.

We affirm.

### ISSUE

The dispositive issue is whether the trial court erred in entering judgment in favor of the owners of the servient tenement and against the easement holder after considering the testimony of the original easement grantor to the exclusion of the testimony of successors in interest to the original grantor and the predecessors in interest to the grantee.

### FACTS AND PROCEDURAL HISTORY

This litigation arose when Rondinelli, as the servient tenant of a lake access easement, sought to enjoin Gunderson, an easement title holder, from erecting and maintaining a boathouse, installing underground electrical cables, operating a motorized all terrain vehicle, and cutting and piling brush on the easement.

In August of 1986, Tina and Steven Westfall (hereinafter collectively "Westfall") and John and Linda Houin (hereinafter collectively "Houin") decided to purchase an undeveloped tract of land along Myers Lake in Marshall County, Indiana. The parties intended to develop the land, subdivide it and sell the smaller parcels. Westfall acquired title to the tract on August 13, 1986, and a few days later, he deeded several lots to Houin. The deed from Westfall to Houin conveyed a 30-foot non-exclusive easement for lake access. The following month, Houin deeded part of his tract with the same easement rights to David and Suzanne Baytos (hereinafter collectively "Baytos"). Westfall, Houin and Baytos each built homes on their respective property. In 1992, Baytos deeded all of his property with these easement rights to John and Janice Lawrence (hereinafter collectively "Lawrence") and in 1994, Lawrence reconveyed the property with the same easement rights to Gunderson. In the interim, Westfall had deeded all of his property to Rondinelli in June of 1991. The deed clearly stated that the conveyance of the fee was subject to the non-exclusive easement.

Prior to filing suit, Rondinelli asked Gunderson to cease the activities complained of, but the parties were unable to resolve their dispute without resort to the court. On June 20, 1994, Rondinelli filed his complaint against Gunderson seeking damages and a permanent injunction. Rondinelli sought to enjoin Gunderson from keeping his boat and boat house at the end of the easement area, operating motor vehicles on the easement, maintaining underground electrical cables on the easement and cutting and piling shrubbery and vegetation in the easement. Gunderson answered and raised his rights as an easement holder as an affirmative defense. Rondinelli filed a motion for summary judgment, which was denied following a hearing.

Ultimately, the case went to trial before the court and the trial court entered judgment in favor of Rondinelli. The trial court entered specific findings of fact and conclusions of law, issuing a permanent injunction against Gunderson and awarding Rondinelli

$1,500.00 in damages. Gunderson now appeals.

## DISCUSSION AND DECISION

### Standard of Review

The trial court entered special findings and conclusions upon Rondinelli's request. When a trial court enters specific findings of fact and conclusions of law under Ind.Trial Rule 52(A), we apply a two-tiered standard of review. First, we determine whether the evidence supports the findings and then we determine whether the findings support the judgment. *Patterson v. Grace*, 661 N.E.2d 580, 584 (Ind.Ct.App.1996). Special findings and the judgment flowing therefrom will be set aside only if they are clearly erroneous. *Id.* The trial court's findings are clearly erroneous if the record is devoid of any facts or reasonable inferences to support them. *Vukovits v. Board of School Trustees of Rockville Community School Corp.*, 659 N.E.2d 174, 177 (Ind.Ct.App.1995). In making our determination, we consider only the evidence most favorable to the judgment and the reasonable inferences flowing therefrom. *Id.* In so doing, we neither reweigh the evidence nor judge the credibility of the witnesses. *Patterson*, 661 N.E.2d at 584.

### Extrinsic Evidence

Gunderson contends that the trial court failed to consider material evidence on the issue of the purpose and intent of the easement. Specifically, Gunderson argues that the testimony of subsequent owners of the servient tenement is relevant, as well as the testimony of predecessors in interest to the dominant tenement. In its finding of fact number four, the trial court found as follows:

[T]he terms creating the easement were not specific and are ambiguous as to the rights created. Extrinsic evidence was submitted to determine the meaning and purpose of the language which evidence included the testimony of Tina Westfall and John Houin, two (2) of the parties involved in the original creation of the easement. Tina Westfall testified that the easement was intended for walking purposes only. John Houin testified that he

had no recollection of discussions regarding the meaning of 'lake access.' He did envision the possibility of erecting a pier at the end of the easement but the pier would only be for swimming or fishing off of and no such pier was constructed by him. (R. 144). The court concluded in finding number 12 that "[t]he true intention of the parties creating the easement was to limit use of the easement to the purpose of walking to the lake." (R. 146). Then, in finding number 15, the court concluded as follows:

Therefore, the Defendant, Gunderson, does not have the right to erect a pier at the end of the easement area, does not have the right to dock a boat at a pier at the end of the easement area, does not have the right to erect a boat house over a boat dock at a pier at the end of the easement area, does not have the right to operate an All Terrain Vehicle on the easement area, does not have the right to install underground electrical cable on or under the easement area, and does not have the right to cut shrubs, weeds, or vegetation on the easement area.

(R. 146).

When the language contained in a deed conveying an easement is ambiguous as to what rights are being conveyed to the easement holder, extrinsic evidence is admissible to ascertain the intent of the parties who created the easement. *Klotz v. Horn*, 558 N.E.2d 1096, 1098 (Ind.1990), *appeal after remand Horn v. Klotz*, 603 N.E.2d 870 (Ind.Ct.App.1992) (holding that phrase "access to [the lake]" was sufficiently ambiguous to allow inquiry into the surrounding facts and circumstances). In *Klotz*, we considered the issue of whether a conveyance of an easement appurtenant that expressly granted "access to Lake Eagle" contemplated the right of the easement holders to erect and maintain a pier along the easement on the servient parcel. We reversed the trial court's judgment in favor of the servient tenants and remanded for a consideration of extrinsic evidence. *Id.* Specifically, we instructed the court on remand to "allow extrinsic evidence or parol evidence to ascertain the intent of the parties who created the easement ... taking into consideration all of

the surrounding circumstances." *Id.* at 1098. In reaching our decision to allow extrinsic evidence in *Klotz,* we relied on *Brown v. Heidersbach,* 172 Ind.App. 434, 360 N.E.2d 614 (1977), wherein we said "[a]n instrument creating an easement must be construed according to the intention of the parties, as ascertained from all facts and circumstances, and from examination of all its material parts." *Brown,* 172 Ind.App. at 441, 360 N.E.2d at 621 (quoted with approval in *Klotz,* 558 N.E.2d at 1099).

▮ The deed conveying the easement in the present case provided in pertinent part as follows: "Grantor conveys a non-exclusive easement for ingress and egress to Grantees for the following described property; An easement for lake access, 30 feet in width...." (R. 165). An easement granting "ingress and egress" over the grantor's property is sufficiently ambiguous as to allow inquiry into the surrounding facts and circumstances. *Metcalf v. Houk,* 644 N.E.2d 597, 600 (Ind.Ct.App.1994). Hence, the trial court acted properly in permitting the introduction of extrinsic evidence.

The thrust of Gunderson's argument, however, is that the trial court failed to consider *all* relevant extrinsic evidence. The evidence presented at trial revealed that Westfall, Houin and Baytos constructed steps leading from the top of the bank to the water's edge. David Baytos testified that, at that time, there was also some discussion about the future construction of a pier. Also, after Westfall's conveyance to Rondinelli, Rondinelli, Houin and Lawrence jointly financed and erected a pier. This occurred prior to Lawrence's conveyance to Gunderson.

Further testimony revealed that some of the easement holders had asserted their riparian rights and that the property owners, including the servient tenant, had jointly used the easement harmoniously in the past. For example, Baytos testified that he was told by Houin that the use of the easement for boating was permissible. Houin testified that he anchored a raft off the shore of the easement for use as a swimming platform. Also, Rondinelli, the servient tenant, docked his pontoon boat at the pier. The trial court acknowledged all of the aforementioned in its findings of fact; however, the court concluded as follows:

13. To so limit the use of the easement deprives the defendant of certain rights he apparently believed he was purchasing when the real estate he owns was acquired and the denial of his ability to use the pier for boat docking purposes may reduce the market value of his property or its marketability, but such is not the fault of the Plaintiff.

14. Although certain activities have taken place that exceeded the intended limits of the easement, all of those activities were with permission, consent, approval, and/or participation by the owners of the servient property. Absent such an agreement, the Defendant is limited to the intended use of the easement.

(R. 146).

▮ The case law clearly expresses that the focal point of inquiry is the intent of the parties who created the easement. *Brown,* 172 Ind.App. 434, 360 N.E.2d 614; *Klotz,* 558 N.E.2d 1096. In the instant case, the trial court considered the testimony of Tina Westfall and John Houin and concluded that the easement rights were intended for walking purposes only. This finding is supported by the evidence. The trial court's conclusion that Gunderson engaged in conduct exceeding the rights that the original grantors intended to grant is supported by the findings. Further, the fact that Lawrence may have misrepresented the easement rights is not the fault of Rondinelli. The trial court was correct in so finding. Having found that the evidence supports the trial court's findings and the findings support the judgment, we must affirm. We will not set aside a judgment based on special findings unless we are "definitely and firmly convinced that the trial court committed error." *Hutner v. Kellogg,* 563 N.E.2d 1338, 1340 (Ind.Ct.App.1990).

Gunderson relies on *Metcalf,* 644 N.E.2d 597, wherein the owner of a lakefront servient estate brought suit against the easement holders to prevent them from building a pier at the end of the easement. The trial court entered judgment in favor of the owners of the servient tenement and the ease-

ment holders appealed. On appeal, we addressed the issue of whether an easement appurtenant that expressly grants ingress and egress over the grantor's property to the water's edge, contemplates the right to the easement holders to build, maintain and use a pier at the lake end of the easement on the servient tenement. *Id.* at 598, 599. We affirmed the trial court in part and reversed in part, holding that "the easement was intended to allow only those uses which make the grant of the easement effectual, that is, those uses which are reasonably necessary to assure the Easement Holders meaningful access and enjoyment of the lake". *Id.* at 601. Particularly, we agreed with the trial court that the easement did not entitle the dominant owners to park motor vehicles on the easement property for extended periods or to store personal property such as boats or pier sections on the easement property. *Id.* However, we held that to assure "effective access to the lake," the easement entitled the dominant owners to drive their vehicles over the easement to the shore, to install and maintain a pier provided that "such use is non-exclusive and does not interfere with the rights to the easement shared by all Easement Holders or with the rights retained by the servient estate." *Id.* at 601. The difference between *Metcalf* and the case before us is that in *Metcalf,* one of the developers testified that the easement grantors had intended that the easement holders enjoy their land in the same manner as those homeowners with lakefront property. *Id.* at 600. Hence, the intent was clear and dictated a result favorable to the easement holders.

In the instant case, the evidence clearly demonstrates that Westfall intended to grant a "walking only" easement. Indeed, this is why the easement was limited to 30–feet in width. Generally, an easement granting the right of ingress and egress involves only the right to pass over a party's land rather than the more extensive right to control or alter the land. *Metcalf,* 644 N.E.2d at 601. The parcel that Gunderson now owns was the first parcel conveyed off by Westfall and Houin, and the trial court correctly

formed its conclusions based on a consideration of the intent of the grantors.

Affirmed.

DARDEN and KIRSCH, JJ., concur.