**CITY OF EAST CHICAGO and the East Chicago Fire Department, Appellants–Defendants,**

v.

**Joseph LITERA and Mary Litera, Appellees–Plaintiffs.**

No. 45A04–9704–CV–141.

Court of Appeals of Indiana.

March 12, 1998.

Rehearing Denied May 27, 1998.

Michael W. Bosch, Bamber, Bosch & Banasiak, Hammond, for Appellants–Defendants.

Kenneth M. Wilk, Highland, for Appellees–Plaintiffs.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Defendants-Appellants the city of East Chicago and the East Chicago Fire Department (hereinafter collectively referred to as East Chicago) appeal the court's ruling in favor of Joseph and Mary Litera (Literas).

Affirmed in part, reversed in part and remanded.

### ISSUE

East Chicago presents two issues for our review, which we re-state and consolidate as follows:

1. Whether East Chicago is immune from liability to the Literas, and

2. Whether there is sufficient evidence to support the findings of the trial court.

### FACTS AND PROCEDURAL HISTORY

During the East Chicago tire fire of 1994, the Literas were evacuated from their home three separate times. Joseph Litera was wheelchair bound due to his arteriosclerosis and other ailments. Each time the Literas were evacuated, paramedics carried him to and from his house. However, on August 1, 1994, when they returned home from an evacuation, the Literas decided not to go in but to wheel Joseph down the street and look at the fire. When they were ready to go home, Mary Litera asked emergency medical technician George Quasney, who was then stationed on the scene on backup duty, to help Joseph into their home. Quasney agreed and asked a second emergency medical technician to help. When attempting to pull Joseph up the steps to his house, Quasney fell down the stairs, causing his co-worker and Joseph also to fall.

On January 25, 1995, the Literas filed this complaint against East Chicago. On December 26, 1995, the case was tried, and the court entered its findings of fact and conclusions of law and order on December 2, 1996. In its ruling, the trial court found that the emergency medical technicians were negligent and that East Chicago was liable for the Litera's injuries. The court also found that East Chicago was not immune from liability under Ind.Code 16–31–6–1 or Ind.Code 34–4–16.5, *et seq.* The Literas were awarded $150,000.00 for medical expenses, pain and suffering, diminished quality of life, and permanent loss of a finger. East Chicago now brings this appeal. Additional facts will be provided as needed.

### DISCUSSION AND DECISION
#### Standard of Review

Due to the fact that the trial court entered findings of fact and conclusions of law along

with its judgment, the applicable standard of review is found in Ind.Trial Rule 52(A). "On appeal of claims tried by the court without a jury ... the court on appeal shall not set aside the findings or judgment unless clearly erroneous...." T.R. 52(A). In reviewing such a judgment, we must first determine whether the evidence supports the findings, and then whether the findings support the judgment. *Hvidston v. Eastridge,* 591 N.E.2d 566, 568 (Ind.Ct.App.1992); *Gunderson v. Rondinelli,* 677 N.E.2d 601, 603 (Ind. Ct.App.1997). "To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility." *Hvidston,* 591 N.E.2d at 568; *see Gunderson,* 677 N.E.2d at 603.

### I. Immunity

During trial and in the closing argument, East Chicago argued that it is immune from liability under Ind.Code 34–4–12.2. However, in its findings of fact and conclusions of law, the trial court only addressed the issue of immunity under Ind.Code 16–31–6–1 and Ind.Code 34–4–16.5, *et seq.* In this appeal East Chicago again asserts its immunity under Ind.Code 34–4–12.2, and we will address it since the trial court did not.

Ind.Code 34–4–12.2–2 states that "[a] person is not liable for any loss that results from an action taken or lack of an action by that person: (1) during an emergency; and (2) with intent to prevent or minimize harm from the emergency." *Id.* For the purpose of this section, the definition of "person" includes an individual or governmental entity that has qualifications or experience in emergency rescue or first aid care. Ind.Code 34–4–12.2–1. "Emergency" is defined as "an occurrence or an imminent threat of an occurrence that involves a hazardous substance or compressed gas and that creates the possibility of harm to any person, to property, or the environment." *Id.* Finally, "hazardous substance" is defined as a material or waste that has been determined to be hazardous or potentially hazardous by a number of regulatory boards listed in the statute or "any substance that may be potentially hazardous

to any person, to property or to the environment." *Id.*

The people determined to be negligent in dropping Joseph Litera were emergency medical technicians. Therefore, they clearly are covered by the definition of "person" for this statute. Ind.Code 34–4–12.2–1. The tire fire caused the city to declare a state of emergency and required that emergency personnel fight the fire and be stationed at that location for three weeks and that the neighboring home owners be evacuated from their homes multiple times. (R. 92, 93, 174). The main concern of those fighting the fire was the fumes released by the fire, not the spread of the fire itself. The Director for Emergency Medical Services for the City of East Chicago at the time of the fire testified that, although they were not worried about the smoke being toxic, "even for a person who had no respiratory problems you could not stand near or in this plume without some type of respiratory device." (R. 175). This testimony supports the position that the plume from the fire was potentially hazardous, qualifying it as a hazardous substance and the fire as an emergency under Ind.Code 34–4–12.2–1. However, the present incident occurred when the Literas were returned to their home. This is evidence that the emergency had ended for that area of the city. Therefore, at the time of the incident the emergency which is required to grant immunity under Ind.Code 34–4–12.2–2(1) was not present. Ind.Code 34–4–12.2 does not provide East Chicago with immunity here.

### II. Sufficiency of the Evidence

Next, East Chicago argues that there is insufficient evidence to support the findings of the trial court judge. Again, when determining whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility. *Hvidston,* 591 N.E.2d at 568; *see Gunderson,* 677 N.E.2d at 603. Success in a claim for negligence requires a showing of: (1) a duty on the part of East Chicago to conform its conduct to a standard

of care arising from the relationship with the Literas, (2) a failure by East Chicago to conform conduct to that standard, and (3) an injury proximately caused by the breach of duty. *Plummer v. Board of Comm'rs of St. Joseph*, 653 N.E.2d 519, 522 (Ind.Ct.App. 1995), *trans. denied.*

 Although there is no dispute about East Chicago's duty and failure to meet the standard required, East Chicago contends that there is no showing of proximate cause. The element of causation requires that the harm would not have occurred but for the defendant's conduct. *Smith v. Beaty*, 639 N.E.2d 1029, 1033 (Ind.Ct.App.1994).

> In order for a plaintiff to carry his burden of proof, he must present evidence of probative value based on facts, or inferences to be drawn from the facts, establishing both that the wrongful act was a cause in fact of the occurrence and that the occurrence was a cause in fact of his injury. The plaintiff's burden may not be carried with evidence based merely upon supposition or speculation.

*Id.* Furthermore, an expert medical opinion which lacks reasonable certainty is not sufficient to support a judgment standing alone; the degree of certainty expressed in the opinion is a determination for the fact finder. *Glenn v. Board of Comm'rs*, 552 N.E.2d 485, 487 (Ind.Ct.App.1990).

 The trial court judge entered as a finding of fact that "Litera was hospitalized from September 13, 1994, to October 8, 1994 ... required by the injuries Joseph suffered due to the fall and arteriosclerosis," that "Joseph had his finger amputated as a result of the fall," and that "Dr. Buchanan testified the fall caused Joseph's injuries and the medical treatment rendered was necessitated by the injuries." (R. 94). Even taking the evidence in a light most favorable to the judgment along with any reasonable inferences, the evidence does not support this finding that the accident caused all of the awarded damages for the later finger amputation, other medical treatment given during this period, and Joseph Litera's well-being.

The relevant evidence on this issue came mostly from Mary Litera and Joseph's doctor, David Buchanan, M.D. Mary testified that at the hospital on the day of the fall, Joseph received some x-rays and a sponge brace for his neck; he did not see a doctor. (R. 123). The medical bills resulting from services provided on the day of the accident amount only to $655.37. (R. 127, Plaintiff's exhibit 1). Then six weeks later Joseph was readmitted; this second visit to the hospital is when his finger was amputated, and he had a port put into his chest. (R. 125). Mary Litera was asked what Joseph could do immediately before the fall that he cannot do now, to which she replied that he can no longer sit in the wheelchair because his body turns blue, that he no longer has control of his bowels, that he is dependent on a catheter, that he cannot feed himself, and that he generally cannot do anything for himself anymore. (R. 129–130, 157–165).

In his published deposition, Dr. Buchanan testified repeatedly about the August 1, 1994 incident and its connection to the September surgery. He stated that he could not say for sure whether the fall was related to the subsequent medical treatment; he opined that the fall may have worsened his condition, and that it was possible that Joseph would have reached his present condition at some point without the fall. (R. 169, deposition pg. 7–8). Dr. Buchanan testified that as a result of the fall Joseph had strained his neck and had some injury to his chest wall. (R. 169, deposition pg. 9–10). Finally, he testified that the trauma to Joseph's finger when he was holding on to the railing in August did not cause the later required amputation but that it may have exacerbated his condition. (R. 169, deposition pg. 13). However, Dr. Buchanan also stated that although the fall could have worsened Joseph's condition, he did not know how or why it would worsen it. (R. 169, deposition pg. 14).

All of the evidence is consistent with the fact that Joseph Litera's prior condition did contribute, in whole or in part, to the September hospital visit. The court has bridled East Chicago with all subsequent medical costs as well as pain and suffering, diminished quality of life, and permanent loss of a finger because of the August 1st incident, when all evidence points to another major contributing factor, the arteriosclerosis. The

expert opinion presented here is not of sufficient certainty to sustain the judgment attributing all of these damages to the August 1st fall, nor is it supported by sufficient corroborating evidence. There is insufficient evidence to support the court's finding that the August 1st incident caused all of the damages awarded by the court. *See Glenn*, 552 N.E.2d at 487 (holding that the trier of fact did not err in determining that the plaintiff's heart disease caused the injury and not the work place).

### CONCLUSION

East Chicago is not immune from liability for the fall on August 1, 1994. However, we find that there is insufficient evidence to support the court's findings that the damages awarded were all attributable to the accident. We remand this case to the trial court to enter an order for damages consistent with the evidence and not inconsistent with this opinion.

Affirmed in part, reversed in part and remanded.

NAJAM and BAKER, JJ., concur.