# FOR PUBLICATION



FILED

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**MICHAEL R. HARTIGAN**
Hartigan & O'Connor P.C.
Chicago, Illinois

**ERIC L. KIRSCHNER**
Green & Kuchel, P.C.
Schererville, Indiana

ATTORNEY FOR APPELLEE:

**JEFFREY S. WRAGE**
Blachly, Tabor, Bozik & Hartman, LLC
Valparaiso, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MR. BULTS, INC. D/B/A MBI, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 56A04-1210-CT-515 |
| | ) | |
| NATHAN ORLANDO, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE NEWTON CIRCUIT COURT
The Honorable Jeryl F. Leach, Judge
Cause No. 56C01-1005-CT-4

**May 10, 2013**

**OPINION – FOR PUBLICATION**

**MATHIAS, Judge**

Nathan Orlando ("Orlando") sued Mr. Bults, Inc., doing business as MBI ("MBI"), for negligence after he was injured when a semi truck backed into the tipper machine he was operating. The jury returned a verdict for Orlando of $650,0000. MBI now appeals and raises two issues, which we restate as whether there was sufficient evidence to sustain a negligence finding and whether the jury award of $650,000 was excessive.

We affirm.

### Facts and Procedural History

Orlando was the operator of a tipper machine for Newton County Development Corporation, an Allied Waste landfill site. A tipper machine lifts garbage trailers into the air via a ramp mechanism and dumps the garbage inside the trailer into the landfill. On October 1, 2008, while Orlando was in the cab of the tipper machine, a driver from MBI backed his semi truck into the tipper machine. Orlando was standing up in the cab at time, and he was knocked off his feet from the impact. The right side of his body and head struck the inside walls of the metal cab. Orlando crawled out of the tipper machine but was dizzy.

Orlando went to the Working Well medical clinic where Dr. Charles Mok, Jr. ("Dr. Mok") treated him. Dr. Mok then transferred him to the emergency room for x-rays, but the x-rays were "unremarkable[.]" Ex. Vol., Plaintiff's Ex. 2. Orlando returned to work the following day, but he experienced problems with walking and with his kneecap shifting. Tr. p. 107. When the pain in his knee persisted, Orlando returned to Dr. Mok multiple times. Dr. Mok eventually ordered an MRI and referred Orlando to an orthopedic surgeon.

Dr. Keith Pitchford ("Dr. Pitchford"), an orthopedic surgeon, examined Orlando monthly from October 2008 to February 2009. In October and November 2008, Dr. Pitchford reviewed the MRI and concluded that Orlando had an anterior femoral bone bruise on his right knee, which Dr. Pitchford attributed to the October 1, 2008 accident due to Orlando's history and "the mechanism of injury[.]" Tr. p. 79; Ex. Vol, Plaintiff's Ex. 2. Dr. Pitchford also found that Orlando had patellar dislocation of his right knee, chondromalacia[1] of the right patella, sprain/strain of the right anterior cruciate ligament, sprain/strain of the right ankle, and a bone bruise on the right navicular. Id. Dr. Pitchford recommended physical therapy for Orlando two to three times a week for four to six weeks, prescribed hydrocodone-acetaminophen tablets, and stated that Orlando could return to work on November 4, 2008, but should not kneel, squat, push or pull, or climb stairs or ladders.

In December 2008, Dr. Pitchford noted that Orlando's ankle was improving and that therapy was helping. Dr. Pitchford suggested usage of a TENS unit to help alleviate pain and prescribed acetaminophen-codeine tablets. Dr. Pitchford again said it was okay to return to work but advised that Orlando should only do sit-down work. In January 2009, Dr. Pitchford noted that Orlando was "doing well[,]" that he had excellent strength in his ankle, and that his "knee is improved 5/5 in range and flexion." Ex. Vol., Plaintiff's Ex. 2. Doctor Pitchford allowed Orlando to return to work without restrictions and recommended therapeutic range and strengthening exercises. On February 2, 2009, Dr. Pitchford again noted that Orlando was okay to go back to work without restrictions.

---

[1] Chondromalacia of the patella is softening of the chondral surface that lines the kneecap.

On May 10, 2010, Orlando brought suit against MBI alleging negligence. The jury trial commenced on May 21, 2012. MBI stipulated to the fact that it was 100% at fault for the accident and stipulated that the amount of the worker's compensation lien was $9,602.72. However, MBI argued that Orlando was not injured in the manner or extent claimed and denied that Orlando's injuries were permanent in nature. MBI also argued that the right knee pain was the result of a pre-existing medical condition. Tr. p. 61. Orlando argued that he suffered permanent impairment to his knee that was a direct and proximate result of MBI's negligence.

Orlando was thirty-one years old at the time of the accident, and the court took judicial notice that his reasonable life expectancy was another forty-three and a half years from the time of the trial. Tr. pp. 95-96. Orlando also presented evidence that due to his injuries, he missed work to attend doctor appointments and physical therapy, and he incurred medical expenses. Tr. pp. 61-62. He has difficulty with his right knee during every day activities such as climbing stars, riding in the car, playing with his children, and taking walks with his wife. Tr. pp. 112-13.

On May 22, 2012, the jury returned a verdict against MBI and found that Orlando was entitled to $650,000 in damages. On June 11, 2012, MBI filed a Motion to Correct Error.[2] The trial court denied this motion on October 12, 2012.

---

[2] Under Indiana Trial Rule 59(A)(2), a motion to correct error is a prerequisite for appeal when the party seeks to address "[a] claim that a jury verdict is excessive or inadequate." Though MBI did file a motion to correct error, we remind counsel that this motion should have been included in the appendix, under Indiana Appellate Rule 50(A)(2)(f), which requires that the appendix should include "pleadings and other documents from the Clerk's Record in chronological order that are necessary for resolution of the issues raised on appeal[.]" That said, we do not find that MBI has waived this argument on appeal. See Ind. Appellate Rule 49(B).

MBI now appeals. Additional facts will be provided as necessary.

## I. Sufficiency

MBI argues that the jury's verdict that it was negligent was not supported by sufficient evidence. "When reviewing a claim of insufficient evidence, we neither reweigh the evidence nor judge the credibility of the witnesses. We consider only the evidence and reasonable inferences therefrom which support the jury's verdict." Hardsaw v. Courtney, 665 N.E.2d 603, 606 (Ind. Ct. App. 1996) (internal citations omitted). We will reverse only "where there is no evidence or reasonable inference from that evidence on an essential element of the plaintiff's case." Id.

"The tort of negligence consists of three elements: (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty by the defendant; and (3) injury to the plaintiff proximately caused by that breach." Pelak v. Ind. Indus. Servs., Inc., 831 N.E.2d 765, 769 (Ind. Ct. App. 2005), trans. denied. Here, MBI concedes that it was at fault for the accident; therefore, there is no dispute about MBI's duty and failure to meet this duty. However, MBI argues there was insufficient evidence that the October 1, 2008 accident was the proximate cause of Orlando's permanent injury to his knee.

To prove the causation element, the plaintiff had to establish that "the harm would not have occurred but for the defendant's conduct." City of E. Chicago v. Litera, 692 N.E.2d 898, 901 (Ind. Ct. App. 1998).

> This element requires, at a minimum, causation in fact—that is, that the harm would not have occurred "but for" the defendants' conduct. The "but for" analysis presupposes that, absent the tortious conduct, a plaintiff would have been spared suffering the claimed harm.

5

Hence, in order for the plaintiff to carry her burden of proof, she must present evidence of probative value based on facts, or inferences to be drawn from the facts, establishing both that the wrongful act was the cause in fact of the occurrence and that the occurrence was the cause in fact of her injury. The plaintiff's burden may not be carried with evidence based merely upon supposition or speculation. Standing alone, evidence establishing a mere possibility of cause or which lacks reasonable certainty or probability is not sufficient evidence by itself to support a verdict. Civil liability may not be predicated purely upon speculation.

When an injury is objective in nature, the plaintiff is competent to testify as to the injury and such testimony may be sufficient for the jury to render a verdict without expert medical testimony. Ordinarily, however, the question of the causal connection between a permanent condition, an injury and a pre-existing affliction or condition is a complicated medical question. When the issue of cause is not within the understanding of a lay person, testimony of an expert witness on the issue is necessary. An expert, who has the ability to apply principles of science to the facts, has the power to draw inferences from the facts which a lay witness or jury would be incompetent to draw. But, even an expert's opinion, in conjunction with other evidence, may be so lacking in probative value as to be insufficient to support a verdict.

Daub v. Daub, 629 N.E.2d 873, 877-78 (Ind. Ct. App. 1994) (internal citations omitted), trans. denied.

In this case, Dr. Pitchford testified that Orlando had a bone bruise on his right knee, a sprain/strain of his right anterior cruciate ligament, had chondromalacia of his right patella, and had patellar dislocation of his right knee. Ex. Vol., Plaintiff's Ex. 2. MBI does not appear to dispute that Orlando's knee was injured but does dispute that the accident caused permanent injury to the knee. MBI argues that "it was never established that the chondromalacia was either initially caused by the accident on October 1, 2008 or permanently aggravated as a result thereof." Appellant's Br. at 11. Rather, MBI argues that this case is similar to City of E. Chicago, 692 N.E.2d at 901, because Dr. Pitchford's

6

testimony was not sufficiently certain in regard to whether the accident was the proximate cause of the chondromalcia and whether the injury to the right knee was permanent. Appellant's Br. at 8-9, 12.

MBI is correct that "evidence establishing a mere possibility of cause or which lacks reasonable certainty or probability is not sufficient evidence by itself to support a verdict." Daub, 629 N.E.2d at 877. However, we disagree that Dr. Pitchford's testimony lacked reasonable certainty. While Dr. Pitchford testified that chondromalacia could be chronic or posttraumatic in nature[,]" he stated it was "[m]ost likely" a symptom of the bone bruise, and he attributed Orlando's bone bruise to the October 1, 2008 accident due to his history and "the mechanism of injury[.]" Tr. pp. 78-79. He also testified that if there was an underlying bone bruise, as there was in this case, "it would be indicative of [an] acute event." Tr. p. 78. Moreover, Dr. Pitchford noted to a degree of medical probability that as permanent condition, "[Orlando] will have some discomfort based on the chondromalacia." Tr. p. 87. For all these reasons, we find Dr. Pitchford's testimony sufficient to establish proximate cause.

Even if Dr. Pitchford's testimony was at all equivocal and was not sufficient to establish proximate cause, we still conclude there was sufficient evidence to establish causation, because we find this case similar to Foddrill v. Crane, where expert testimony was not necessary to prove the causal connection. 894 N.E.2d 1070, 1078 (Ind. Ct. App. 2008). In Foddrill, we concluded that expert testimony was not "required to show a causal relationship between the accident and Crane's injuries under the circumstances of this case" when the injury was objective in nature and there was "no evidence that Crane

7

suffered from any preexisting neck injuries, the collision was sufficiently forceful so as to cause Crane's head to hit the roof of her vehicle, and she almost immediately afterwards began feeling stiffness and pain in her neck." Id.

Here, Orlando testified that prior to the October 1, 2008 accident he had never suffered knee pain. The accident on October 1, 2008 caused the right side of his body to be slammed against the steel walls of the tipper machine's cab. Since the accident, he has had difficulty engaging in numerous activities such as climbing stars, riding in the car, playing with his children, and taking walks with his wife.[3] Tr. pp. 100, 112-13. Moreover, MBI concedes that chondromalcia is an objective condition, Appellant's Br. at 15, and "[w]hen an injury is objective in nature, the plaintiff is competent to testify as to the injury and such testimony may be sufficient for the jury to render a verdict without expert medical testimony." Daub, 629 N.E.2d at 877. Thus, even if Dr. Pitchford was at all equivocal regarding the permanent nature of the knee injury, as in Foddrill, "the causal connection here is not so complex that a layperson would be unable to comprehend it without expert testimony." 894 N.E.2d at 1078.

For all these reasons, we conclude that there was sufficient evidence that October 1, 2008 accident was the proximate cause of Orlando's permanent knee condition, because Dr. Pitchford's testimony was of sufficient certainty and was supported by sufficient corroborating evidence.

---

[3] We also note that MBI did not present any expert testimony, or any other evidence, that would suggest that Orlando's permanent injury to his knee was not caused by the accident.

8

## II. Excessive Verdict

MBI argues that the amount of the jury verdict is excessive and is not supported by the evidence but rather is the product of prejudice, passion or sympathy. MBI specifically contends that passion or prejudice was engendered with the jury and resulted in an excessive damages award (1) because "a prospective juror" during voir dire made comments that he had past experience with MBI and it was not a good experience[4] and (2) because Orlando testified that he was born without a portion of his left arm. Appellant's Br. at 17-18.

When we review a damage award, we show great deference to the jury's determination and uphold the determination the award is "'within the bounds of the evidence.'" Sears Roebuck and Co. v. Manuilov, 742 N.E.2d 453, 462 (Ind. 2001) (quoting Annee v. State, 256 Ind. 686, 690, 271 N.E.2d 711, 713 (1971)). We will not invade the province of the jury and will not deem a verdict to be the result of improper considerations, unless the verdict cannot be explained on any reasonable ground. Id. "'Thus, if there is any evidence in the record that supports the amount of the award, even if it is variable or conflicting, the award will not be disturbed.'" Id. We will vacate an award of damages only when it is not rationally related and "so great as to clearly indicate that the jury was motivated by prejudice, passion, partiality, corruption, or that it considered an improper element." Glasscock v. Corliss, 823 N.E.2d 748, 757 (Ind. Ct. App. 2005), reh'g denied, trans. denied.

---

[4] The prospective juror was struck from the jury pool prior to trial.

Here, the jury was instructed that in deciding the amount of money the jury could award for damages, it could consider:

One – the nature and extent of the injuries and the effect of the injuries on Nathan Orlando's ability to function as a whole person[;]

Two – whether the injuries are temporary or permanent;

Three – the value of lost earnings;

Four – the physical pain Nathan Orlando has experienced and will experience in the future as a result of the injuries;

Five – the reasonable value of necessary medical care, treatment, and services Nathan Orlando incurred and will incur in the future as a result of the injuries[;]

Six – the aggravation of a previous condition;

Seven – the life expectancy of Nathan Orlando.

Tr. pp. 206-07.

The record reveals that there was evidence supporting these factors and that the jury could have based its damage award solely upon this evidence, rather than on any prejudice or passion. Dr. Pitchford testified that when he examined Orlando after the accident in October 2008, Orlando had an anterior femoral bone bruise on his right knee, which Dr. Pitchford attributed to the October 1st accident, patellar dislocation of his right knee; chondromalacia of the right patella; sprain/strain of the right anterior cruciate ligament; sprain/strain of the right ankle; and a bone bruise on the right navicular. He had medical bills and physical therapy costs alone, and he had to miss work for these doctors' appointments and for physical therapy, resulting in lost wages. His total worker's compensation claim was $9,602.72.

10

However, his worker's compensation claim did not include the damages for the permanent impairment to his knee nor did it capture the physical pain Orlando has had to deal with due to the injuries.[5] Orlando and his wife, Kristin Orlando ("Mrs. Orlando"), gave extensive testimony regarding how the nature of his injuries has impeded his ability to function as whole person and how the injury will continue to impede his life in the future. Since the accident, Orlando has had problems climbing stairs and problems with his knee locking up during car rides. Tr. pp. 112-13. During the summer his knee swells due to heat and increased activity, and during the winter, trudging through snow is difficult with his knee. Moreover, Orlando was also not able to help his younger son learn to ride his bicycle since he could not run behind the bicycle to catch his son when he fell, and he struggled when he took his two sons to the zoo because of the long walks on the concrete. Tr. pp. 112-13.

Mrs. Orlando testified that now Orlando "observes more than interacts" and that he is "not able to do a lot of the things" because of the pain. Tr. pp. 165-66. She explained that he is not able to coach his children's sports, not able to run around with them, and not able to participate in the "regular family activities" that he did before the accident, such as walking the dog and bike riding. Id. at 166. Moreover, we note that Orlando was only thirty-one years old at the time of the injury and had a life expectancy of forty-three and half more years at the time of trial. Thus, Orlando has to live with the impairment his knee may cause him for many years to come. While this damage is

---

[5] MBI also argues that Orlando was only asking for $75,000 in damages. However, Orlando clearly argued that $75,000 was where he thought the jury should begin its discussion for damages, but he did not limit his damages to this amount. Tr. p. 223.

difficult to quantify, the jury is in the best position to assess the damages, because they had the opportunity to weigh evidence and to assess the credibility of the witnesses.[6]

In this case, there were reasonable grounds to support the verdict, including Orlando's medical and physical therapy costs, his physical pain, the emotional stress caused by the accident, the struggle of having to live with permanent knee impairment, and the effect his knee injury will continue to have on his ability to engage with his family. For all these reasons, we conclude there was sufficient evidence supporting the jury verdict and that the verdict can be explained on grounds other than prejudice, passion, partiality, corruption, or another improper element. For all of these reasons, we cannot say that $650,000 in damages was excessive.

## Conclusion

We conclude there was sufficient evidence from which the jury could conclude that the accident was the proximate cause of Orlando's permanent knee injury and that the jury's $650,000 award of damages was not excessive.

Affirmed.

BAKER, J., and MAY, J., concur.

---

[6] MBI also argues that "[i]f there is no evidence to establish the loss of earning capacity, there can be no recovery on that issue." Scott v. Nabours, 156 Ind. App. 317, 321, 296 N.E.2d 438, 441 (1973) (holding the trial court did not err by withdrawing the issue of loss of earning capacity from the jury, when there was no evidence in that regard). However, the final jury instructions gave a list of factors the jury could consider in determining the amount of money to award, and while the final jury instructions did include an instruction on lost earnings, there was no instruction on loss of earning capacity. Tr. pp. 206-07.

12