

IN THE

# Court of Appeals of Indiana

Anastasia Blanchard,

*Appellant-Plaintiff*



FILED

Sep 26 2025, 9:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

HRC Hotels, LLC d/b/a TownePlace Suites by Marriott Fort Wayne North,

*Appellee-Defendant*

September 26, 2025

Court of Appeals Case No.
24A-CT-2442

Appeal from the Allen Superior Court

The Honorable David J. Avery, Judge

Trial Court Cause No.
02D09-2211-CT-610

**Vaidik, Judge.**

## Case Summary

[1] Anastasia Blanchard brought a negligence action against HRC Hotels, LLC d/b/a TownePlace Suites by Marriott Fort Wayne North ("the Hotel") after she was injured in a fall in the Hotel's parking lot. A jury returned a verdict for the Hotel, finding that Blanchard was 68% at fault and that the Hotel was only 32% at fault. Blanchard now appeals, arguing that the trial court should have granted her judgment on the evidence on the issue of liability, leaving only damages to be determined. In the alternative, she seeks a new trial on the issues of comparative fault and damages, claiming that the trial court improperly intervened in her questioning of a witness. Finding no error, we affirm.

## Facts and Procedural History

[2] On August 18, 2022, Blanchard was staying at the Hotel. At around 9:00 a.m., she carried a bag of garbage through the parking lot, first to her van and then toward a dumpster. As she approached the dumpster, her foot caught on a raised edge of cracked and broken concrete, she tripped and fell, and she was injured as a result. The oval on the following photo indicates where Blanchard says she tripped:



Appellant's App. Vol. 2 p. 58.

[3] Blanchard sued the Hotel for negligence. The Hotel asserted as an affirmative defense that Blanchard's comparative fault precluded any recovery. (Indiana's comparative-fault statutes, found in Indiana Code chapter 34-51-2, provide that a claimant who is more than 50% at fault is barred from recovery.)

[4] A jury trial was held in August 2024. Blanchard presented evidence of the condition of the concrete over which she tripped. She also testified she was carrying "a pretty big kitchen garbage bag" as she walked. Tr. Vol. 3 p. 53. She said, "I was looking straight ahead, the way I always do when I walk," and she didn't see the crack in the concrete. *Id.* at 89-90. She added, "I was paying attention to my surroundings, making sure there were no cars around and looking towards the direction that I was walking in and I think that was paying attention." *Id.* at 91.

[5] Blanchard called several other witnesses, including Richard Ehrman, the Hotel's head of maintenance. Because Blanchard contends that the trial court improperly intervened in her examination of Ehrman, we quote from that portion of the transcript at length. After Ehrman answered some questions about his background, Blanchard's attorney had him look at a photo of the cracked concrete by the dumpster and then had the following exchange with him:

> Q    [D]id you ever think to say anything about this?
>
> A    Common sense told me that it did not need repaired. It was not a trip factor.

> Q    So, as you walked through this area each morning, it didn't catch your eye as something that somebody might trip on?
>
> A    No.
>
> Q    Why not?
>
> A    There's lots of people that travel through that area and there's been no reports of injury from that area from people walking through there.

Tr. Vol. 2 p. 168. Counsel pointed out that Ehrman's bosses had testified that the cracked concrete was a trip hazard and asked Ehrman if they should have communicated this to him or given him "some training to recognize this." *Id.* at 170. Ehrman responded that "[i]f they would have gave me the training or if they would have brought it to my attention that it should have been repaired, I would have repaired it," but that "common sense told me that it's not a trip hazard, so that's why I uh, didn't." *Id.* Counsel again asked, "[Y]our common sense didn't tell you that this was a trip hazard, did it?" Ehrman answered, "No, it didn't." *Id.* at 171.

[6]    Shortly thereafter, counsel had the following exchange with Ehrman:

> Q    So, what does your common sense tell you, would be a trip hazard?
>
> A    A hole.

> Q    How deep would that hole need to be before you thought it might be a trip hazard?

> A    Probably a couple of inches; three maybe.

*Id.* at 172. Counsel asked Ehrman if he "ever consider[ed] spray paint there to mark that off to catch people's eye as they are walking through the area[.]" *Id.* at 173. Ehrman said no. Counsel told Ehrman that one of his bosses had testified that the concrete was not in a "proper state of repair," as required by a Fort Wayne ordinance, and asked Ehrman if he disagreed. *Id.* Ehrman responded, "He is not there every day like I said. I am there every day. I see things. If they need repaired, I repair them." *Id.* Counsel again showed Ehrman a photo of the concrete and asked him if it was in a "proper state of repair." *Id.* At that point, the trial court interjected, "I am going to suggest we move on. I think we've got the point you've tried to make." *Id.*

Counsel then read from another ordinance and asked Ehrman if he believed the concrete was "properly maintained and in a good state of repair[.]" *Id.* at 174. Ehrman answered, "It's not a trip hazard." *Id.* The court again interjected and had the following exchange with counsel:

> COURT:    I have asked you – let's move on from [t]his.

> COUNSEL: Okay.

> COURT:    He has testified, he did not see it in his opinion as a hazardous area.

COUNSEL: Understood.

COURT:     You are not going to get him to change his mind.

COUNSEL: Understood.

COURT:     So, move on to the next point you wish to make.

*Id.*

Counsel asked Ehrman if Blanchard's fall changed his opinion that the cracked concrete wasn't a trip hazard. The Hotel's attorney objected, stating, "His opinion has been the same no matter how many times we ask this question." *Id.* at 175. The trial court overruled the objection, noting that "the question has changed a little bit." *Id.* at 176. Ehrman answered, "No." *Id.* The following exchange ensued:

> Q      So, if there was a condition like this in the hotel's lobby, would that be okay?
>
> A      Conditions aren't like that in the lobby.
>
> Q      I'm – I know they're not, but if you saw something like this in the hotel's lobby, hypothetically, would that be okay?
>
> A      It's not in the lobby.
>
> Q      I am asking you, hypothetically, if you saw a condition like this…

> COURT:     [Counsel], move on.
>
> COUNSEL: He hasn't answered.
>
> COUNSEL: Your Honor, it's…
>
> COURT:     He answered the question. You asked him the question, he answered it, move on.
>
> COUNSEL: Your Honor, I – I – I – he hasn't answered the question. I asked him if he – if there was a condition like that in the hotel's lobby, hypothetically, if that would be okay. All he said was that there is not a condition like that.
>
> COURT:     He said it's not in the lobby. That's his answer.

*Id.* at 176. Counsel asked a few more questions and then ended his examination of Ehrman. After the Hotel's cross-examination, Blanchard's attorney asked Ehrman several questions on re-direct with no further intervention by the court.

[9] During the jury's lunch break, the court had the following exchange with Blanchard's attorney:

> COURT:     Okay. So, [Counsel], I don't normally intervene in somebody conducting their examination. Trial advocacy, if you have got a witness, the witness says – says I don't think that it violated the standard. I don't care how many approaches you take with that witness, you are not going to get that witness to change their mind. The best thing you can do is point on – get him to make his statement that I didn't think it violated the standard, you've got photographs, you've got experts, you are going to call other witnesses that in closing argument, you just

point out if you don't believe his testimony makes sense, you've got him all set up for that.

COUNSEL: Right. Sure, understood.

COURT:    You – you just…

COUNSEL: Leave it.

COURT:    You can't force somebody to say something that they don't want to say.

COUNSEL: Understood. I'll – I'll explain to him. My purpose for that was…

COURT:    Which is why I stepped in…

COUNSEL: Right.

COURT:    Because he wasn't going to change his mind.

COUNSEL: Right and I just wanted to make that as clear as possible to the jury that he was going to be entrenched there.

COURT:    It was – the problem is if you keep at it then the [e]ffect that you got or you wanted – why – why is he messing around like that.

COUNSEL: I understand.

COURT:    So, I just wanted you to understand why I stepped in.

COUNSEL: I appreciate it, thank you.

*Id.* at 187-88.

[10]     For its part, the Hotel admitted that it was negligent and was partially at fault for Blanchard's fall, but it argued that Blanchard was also negligent and was more than 50% at fault. The Hotel presented the report and testimony of expert Jeffrey Schroeder, a forensic engineer. In his report, Schroeder noted that he had inspected the parking lot and taken measurements of the "change in elevation" of the concrete where Blanchard fell, and the "measurements varied between 0.5 inches and 1.0 inches." Appellant's App. Vol. 2 p. 82. Schroeder also reviewed photographs of the parking lot, Blanchard's complaint, the report of Blanchard's expert, written discovery documents, and deposition transcripts. As to Blanchard's deposition, Schroeder noted:

> [Blanchard] testified that she failed to identify the position of the pavement joint as she approached that area. [I] did not observe any obstructions between the area where Ms. Blanchard parked her car and the concrete pavement in front of the dumpster. Ms. Blanchard did not testify that anything was obstructing her view of the pavement on her chosen pathway from the parked vehicle. Her answer was "*No*" when asked "were you looking down in front of you at all?"

*Id.* at 87. The report concluded:

> The act of carrying the garbage from her hotel room, and her vehicle, were potential contributors to her lack of situational awareness and failure to observe the pavement joint in front of her. Ms. Blanchard's testimony demonstrated that she was not

situationally aware of the pavement joint. Situational awareness of her surroundings while ambulating was the first event that needed to be completed to successfully traverse the pavement between her parked vehicle and the dumpster. [Blanchard's] failure to be situationally aware of her surroundings precluded her from successfully forming a cognitive model of the pavement joint, as well as the subsequent events required in the successful navigation across the pavement. Based on Ms. Blanchard's testimony, **[Blanchard's] lack of situational awareness while carrying trash and walking across the parking lot prevented her from perceiving the joint in the concrete pavement.** Due care and caution are required to successfully ambulate in environments that are subject to changes. [Blanchard's] lack of care and caution while ambulating was a risk to her own safety. **[Blanchard] failed to exercise due care and caution for her own safety while carrying trash and walking across the parking lot pavement.**

*Id*. at 88 (emphases in original). Schroeder's testimony was consistent with his report. *See* Tr. Vol. 3 pp. 131-64.

[11] The jury returned a verdict for the Hotel, finding that both the Hotel and Blanchard were negligent but that Blanchard was 68% at fault and the Hotel was only 32% at fault. The court entered judgment accordingly.

[12] A few weeks later, Blanchard filed a motion to correct error. She first requested judgment on the evidence on the issue of liability (and a new trial on damages

only).[1] She claimed that the Hotel presented no evidence that she had been negligent and that the jury's finding that she was negligent "could have been reached only through impermissible inferential speculation." Appellant's App. Vol. 2 p. 35. Alternatively, she asked for a new trial on the issues of comparative fault and damages, arguing that the trial court improperly intervened in her questioning of Ehrman.[2] The trial court denied Blanchard's motion without explanation.

[13] Blanchard now appeals.

# Discussion and Decision

## I. The trial court properly denied Blanchard's motion for judgment on the evidence

[14] Blanchard first contends that the Hotel didn't present sufficient evidence to support a finding that she was negligent and that the trial court therefore erred by denying her motion for judgment on the evidence on the issue of liability. Judgment on the evidence is governed by Indiana Trial Rule 50(A), which provides, in relevant part:

> Where all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence or a verdict

---

[1] Motions to correct error are governed by Indiana Trial Rule 59, whereas motions for judgment on the evidence are governed by and generally filed under Indiana Trial Rule 50. But Rule 50(A)(4) gives parties the option of moving for judgment on the evidence in a motion to correct error. That is what Blanchard did here.

[2] Blanchard also asked for a new trial on the ground that the jury's allocation of more than 50% of the fault to her was against the weight of the evidence. She doesn't renew that argument on appeal.

thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding a verdict.

The issue under this rule is the sufficiency of the evidence as a matter of law. *Indianapolis Pub. Transit Corp. v. Bush*, No. 25S-CT-245, slip op. at 6-10 (Ind. Sept. 15, 2025). The trial court must decide, without weighing conflicting evidence or judging witness credibility, whether "'the evidence supports any reasonable inference in favor of the nonmovant.'" *Id.* at 9 (quoting *Cosme v. Clark*, 232 N.E.3d 1141, 1152 (Ind. 2024)). On appeal from the trial court's ruling, our review is de novo, meaning we apply the same standard as the trial court and give no deference to its ruling. *Id.*[3]

[15] Here, there is sufficient evidence to support the jury's finding that Blanchard was negligent. The Hotel's strongest evidence that Blanchard was negligent came from its expert, Jeffrey Schroeder. He opined both in his report and in his trial testimony that Blanchard lacked "situational awareness" and failed to exercise due care and caution for her own safety. Blanchard acknowledges

---

[3] This Court has often said that trial courts have discretion in ruling on motions for judgment on the evidence and that we review such rulings for abuse of that discretion. *See, e.g.*, *London Witte Grp., LLC v. City of Marion*, 222 N.E.3d 301, 309 (Ind. Ct. App. 2023); *Hill v. Rhinehart*, 45 N.E.3d 427, 435 (Ind. Ct. App. 2015), *trans. denied*; *Lightning Litho, Inc. v. Danka Indus., Inc.*, 776 N.E.2d 1238, 1241 (Ind. Ct. App. 2002), *reh'g denied*, *trans. denied*; *Levee v. Beeching*, 729 N.E.2d 215, 223 (Ind. Ct. App. 2000); *Smock Materials Handling Co. v. Kerr*, 719 N.E.2d 396, 401 (Ind. Ct. App. 1999). These statements can be traced back to *Zemco Manufacturing, Inc. v. Pecoraro*, 703 N.E.2d 1064, 1071 (Ind. Ct. App. 1998), *trans. denied*, which cited *Salcedo v. Toepp*, 696 N.E.2d 426 (Ind. Ct. App. 1998). But in *Salcedo*, we said that "[t]he granting or denial of a motion for a **new trial** is within the broad discretion of the trial court and will be reversed only for the abuse of that discretion." 696 N.E.2d at 432 (emphasis added). A new trial is different relief than judgment on the evidence.

Schroeder's opinion but repeatedly asserts that it was "conclusory" and was therefore insufficient to support the jury's verdict. Appellant's Br. pp. 15-18; Appellant's Reply Br. pp. 8-9.

[16] To be clear, Blanchard didn't argue in the trial court, and she doesn't argue on appeal, that Schroeder isn't qualified as an expert under Indiana Evidence Rule 702(a) ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."). Nor does she contend that the allegedly conclusory nature of Schroeder's opinion made it inadmissible. As Blanchard acknowledges, Indiana Evidence Rule 705 provides, "Unless the court orders otherwise, an expert may state an opinion and give the reasons for it without first testifying to the underlying facts or data. But the expert may be required to disclose those facts or data on cross examination." But the second sentence of this rule dooms Blanchard's argument.

[17] The way to attack the allegedly conclusory nature of an expert's opinion is through cross-examination. The point of that cross-examination is to try to convince the jury to assign little or no weight to the expert's opinion. As we have said about Rule 705:

> Pursuant to this rule, the admissibility of expert testimony does not hinge on the expert's disclosure of the facts and reasoning that support his opinion. The lack of facts and reasoning, which

> may be brought out on cross-examination of the expert, **goes to the weight to be given the expert's opinion**, not its admissibility.

*Dorsett v. R.L. Carter, Inc.*, 702 N.E.2d 1126, 1128 (Ind. Ct. App. 1998) (emphasis added), *trans. denied*. So, by challenging Schroeder's opinion as conclusory, Blanchard is challenging the weight it should be given. And our Supreme Court has made clear that a court presented with a motion for judgment on the evidence cannot weigh the evidence. *Bush*, No. 25S-CT-245, slip op. at 9. Once Schroeder's opinion was before the jury, it was up to the jury to decide how much weight to give it, based in part on the effectiveness of Blanchard's cross-examination.

[18] In any event, Schroeder's opinion wasn't conclusory. He based his report and testimony on photographs of the parking lot, his inspection of the parking lot, measurements of the concrete where Blanchard fell, and his review of various discovery documents, including deposition transcripts. Three facts in particular were central to Schroeder's opinion that Blanchard was negligent. First, Blanchard was carrying a bag of garbage while she was walking. While carrying a bag of garbage certainly isn't negligent in and of itself, this circumstance did necessitate an added degree of caution from Blanchard. Second, besides possibly the garbage bag, no obstructions prevented Blanchard from seeing the condition of the concrete in front of the dumpster. Third, and most importantly, Blanchard acknowledged at her deposition that she wasn't looking down "at all" as she walked toward the dumpster. Taken together, these facts were more

than sufficient to support Schroeder's opinion, and the jury's conclusion, that Blanchard was negligent.

[19] The trial court didn't err by denying Blanchard's motion for judgment on the evidence.

## II. The trial court didn't abuse its discretion by intervening in Blanchard's examination of Richard Ehrman

[20] Turning to Blanchard's alternative argument, she contends that the trial court improperly intervened in her examination of the Hotel's head of maintenance, Richard Ehrman, requiring a new trial on comparative fault and damages. While trial courts have discretion to manage the proceedings before them, litigants are generally allowed to present their cases as they see fit. Indiana Evidence Rule 611(a) directs trial courts to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." The key word is "reasonable." We review a trial court's actions under this rule for abuse of discretion. *See Hancz-Barron v. State*, 235 N.E.3d 1237, 1245-46 (Ind. 2024).

[21] The trial court didn't abuse its discretion here. The court didn't intervene to save Ehrman from having to answer difficult questions. It intervened because Blanchard's attorney was repeatedly asking new variations of the same two

basic questions that Ehrman had already answered: was the cracked concrete a trip hazard, and did it need to be repaired?

[22] Counsel asked Ehrman if he ever thought about saying something to his bosses about the condition of the concrete, and he said he didn't because he didn't believe it was a "trip factor" and didn't need to be repaired. Counsel asked Ehrman if the concrete caught his eye "as something that somebody might trip on," and he said no. Counsel asked Ehrman if his common sense told him that the concrete was a trip hazard, and he said it didn't. Counsel asked Ehrman what his common sense tells him would be a trip hazard, and he said a hole two or three inches deep. Counsel asked Ehrman if he ever considered spray painting the area to warn people, and he said no. Counsel asked Ehrman if he agreed with one of his bosses that the concrete was not in a "proper state of repair," as required by a Fort Wayne ordinance, and he said that if things need repaired, he repairs them. The court allowed all these questions without interruption. It wasn't until counsel again asked Ehrman if he believed the concrete was in a "proper state of repair" that the court intervened and told counsel to move on.

[23] Continuing, counsel immediately read from another ordinance and asked Ehrman if he believed the concrete was "properly maintained and in a good state of repair." After Ehrman answered that "[i]t's not a trip hazard," the court again asked counsel to move on, explaining, "You are not going to get him to change his mind." Counsel then asked Ehrman if Blanchard's fall changed his opinion that the concrete wasn't a trip hazard. The court overruled the Hotel's

objection, believing that the question had "changed a little bit." Ehrman's answer was no. Next, counsel transitioned to a hypothetical, asking Ehrman if it would be okay "if there was a condition like this in the hotel's lobby." Ehrman said there isn't a similar condition in the lobby. Counsel repeated the same question, and Ehrman repeated the same answer. When counsel again repeated the question, the court said to move on. That was the last time the court interjected. Later, outside the presence of the jury, counsel essentially conceded that the questioning was redundant, explaining that he "just wanted to make that as clear as possible to the jury that [Ehrman] was going to be entrenched there." That point had been effectively made.

[24] Considering the questioning as a whole, the trial court did not abuse its discretion to "exercise reasonable control" over the mode of examining a witness so as to avoid wasting time and protect the witness from harassment.

[25] Blanchard also argues that, by intervening, the trial court "improperly expressed an opinion" on Ehrman's credibility and on the case in general. Appellant's Br. pp. 23-24. We disagree. The only opinion the court expressed was that Ehrman had made clear that he didn't believe the concrete was a trip hazard or in need of repair and that he wasn't going to change his mind or give Blanchard the answers she wanted. And based on the full transcript of the examination, that opinion was reasonable and accurate.

[26] Finally, Blanchard asserts that the trial court "crossed the barrier of impartiality and prejudiced [her] case" by "unnecessarily admonishing" her attorney in

front of the jury. *Id.* at 25. Again, we disagree. Blanchard doesn't identify any particular language she believes was improper, and we don't find any of the court's language to be excessively harsh or otherwise inappropriate.

[27] The trial court's intervention in Blanchard's examination of Ehrman was not an abuse of discretion.

[28] Affirmed.

DeBoer, J., concurs.
Bailey, J., concurs in part and dissents in part, with separate opinion.

ATTORNEYS FOR APPELLANT

Brandon Yosha
Bryan C. Tisch
Alexander C. Trueblood
Yosha Law
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Michael J. Raudebaugh
Clausen Miller P.C.
Tampa, Florida

Codie J. Ross
Reminger Co., L.P.A.
Fort Wayne, Indiana

**Bailey, Judge, concurring in part and dissenting in part.**

[29] I concur with the majority's opinion that the trial court did not abuse its discretion when it intervened in Blanchard's cross-examination of Richard Ehrman. However, I write separately to explain why I dissent from the majority's decision that the trial court properly denied Blanchard's motion for judgment on the evidence.

[30] When a party asserts in a Trial Rule 59(J) motion to correct error only that the jury's verdict was clearly erroneous as not supported by the evidence, we review the trial court's decision de novo, "without weighing conflicting evidence or assessing witness credibility." *Indianapolis Pub. Transp. Corp. d/b/a IndyGo Pub. Transp. v. Bush*, No. 25S-CT-245, slip op. at 10 (Ind. Sept. 15, 2025) (citation modified) (distinguishing a Rule 59(J) motion to correct error asserting the verdict is "against the weight of the evidence," in which case the trial court "acts as a thirteenth juror"). Because Blanchard asserts only that the verdict was erroneous as not supported by the evidence, our review here is de novo.

[31] Determining whether evidence is sufficient to survive a motion for judgment on the evidence requires both a quantitative and a qualitative analysis. *Cosme v. Clark*, 232 N.E.3d 1141, 1148 (Ind. 2024) (citing *Purcell v. Old Nat'l Bank*, 972 N.E.2d 835, 840 (Ind. 2012)). As a panel of this court recently noted,

> "Evidence fails quantitatively only if it is wholly absent; that is, only if there is no evidence to support the conclusion." [*Purcell*, 972 N.E.2d at 840]. "If some evidence exists, a court must then proceed to the qualitative analysis to determine whether the

evidence is substantial enough to support a reasonable inference in favor of the non-moving party." *Id.* Evidence fails qualitatively "when it cannot be said, with reason, that the intended inference may logically be drawn therefrom; and this may occur either because of an absence of credibility of a witness or because *the intended inference may not be drawn therefrom without undue speculation.*" *Id.* (quoting *Am. Optical* [*Co. v. Weidenhamer*], 457 N.E.2d [181,] 184 [(Ind. 1983)]).

*Husainy v. Granite Mgmt., LLC*, 132 N.E.3d 486, 492-93 (Ind. Ct. App. 2019) (emphasis added).

[32]     There is no question that Blanchard carried her burden of proving that the Hotel was negligent; in fact, the Hotel admitted its negligence at trial, the jury found that the Hotel was negligent, and the Hotel does not challenge that conclusion on appeal. Given this negligence, it was then incumbent upon the Hotel to prove, first, that Blanchard's actions also were negligent and, second, that her negligence exceeded that of the Hotel. *See* Ind. Trial Rule 9.1(A) ("In all claims alleging negligence, the burden of pleading and proving contributory negligence… shall be upon the defendant…"); Ind. Code §§ 34-51-2-5 and 34-51-2-6 (regarding comparative fault); I.C. § 34-6-2.1-68(b) (defining "fault" to include "any act or omission that is negligent…and unreasonable failure to avoid an injury"). "[A]pportionment of fault is uniquely a question of fact to be decided by the fact-finder" but becomes an issue of law "when there is no dispute in the evidence and the fact-finder is able to come to only one logical conclusion." *St. Mary's Med. Ctr. of Evansville, Inc. v. Loomis*, 783 N.E.2d 274, 285 (Ind. Ct. App. 2002).

[33] Here, there is no dispute in the evidence, and, therefore, Blanchard is not asking us to weigh conflicting evidence, as the majority suggests. Rather, the only and undisputed evidence related to Blanchard's alleged negligence is that Blanchard, while carrying a trash bag, walked toward a dumpster in the Hotel's parking lot while looking forward rather than down at her feet. However, this Court has already decided, as a matter of law, that "falling and injuring one's self [alone] proves nothing. Such happenings are commonplace wherever humans go." *Wright Corp. v. Quack*, 526 N.E.2d 216, 218 (Ind. Ct. App. 1988), *trans. denied*. Thus, the "mere allegation of a fall is insufficient to establish negligence, and negligence cannot be inferred from the mere fact of a fall." *Hall v. Eastland Mall*, 769 N.E.2d 198, 206 (Ind. Ct. App. 2002). As a panel of this Court stated in *Templeton v. City of Hammond*, "[a] pedestrian is not bound to keep his eyes constantly on the sidewalk.... Nor is he required to make an active search for defects, ... or look for danger at every step.... He is not negligent, as a matter of law, in failing to see a defect in plain view." 679 N.E.2d 1368, 1373 (Ind. Ct. App. 1997) (citation modified).

[34] The conflict in this case is not in the evidence, but in what the evidence means. The Indiana Rules of Evidence allow an expert to give an opinion on what the evidence means if the expert's "specialized knowledge" will help the jury's understanding. Evid. R. 702. I do not believe a jury needs an expert's opinion in order to decide how a reasonably aware person would walk in a parking lot. *Cf., e.g.*, *Willis v. Westerfield*, 839 N.E.2d 1179, 1188 (Ind. 2006) (citation modified) (noting, "on medical matters which are within the common experience,

observation, or knowledge of laymen, no expert testimony is required to permit a conclusion on causation"). However, despite our caselaw indicating otherwise, Schroeder opined as an expert that Blanchard, merely by walking while looking forward rather than down,[4] failed to "exercise due care" and had a "lack of situational awareness." Tr. v. III at 139.

[35] Not only does this expert opinion add nothing to the actual evidence, it is also mere conjecture by Schroeder. Of course, an expert's opinion on causation may be admissible, even if speculative. *See, e.g.*, *Herman v. Ferrell*, 276 N.E.2d 858, 862 (Ind. Ct. App. 1971). However, "such speculative testimony standing alone will not support a judgment." *Id*. "Absent factual evidence, negligence cannot be supported by an inferred chain of events[,] and inferential speculation alone cannot establish negligence. The jury's determination may not be based on mere conjecture…. Qualitatively, such an evidentiary process is defective." *Wright Corp.*, 526 N.E.2d at 218; *see also, e.g.*, *Mr. Bults, Inc. v. Orlando*, 990 N.E.2d 1, 5 (Ind. Ct. App. 2013) (citation modified) ("[E]ven an expert's opinion, in conjunction with other evidence, may be so lacking in probative value as to be insufficient to support a verdict."), *trans. denied*.

[36] The Hotel was required to provide some evidence that Blanchard acted in a careless manner rather than merely arguing that walking to a dumpster while

---

[4] The majority states that the fact that Blanchard carried a bag of garbage "necessitate[d] an added degree of caution from Blanchard," slip op. at 17, but Schroeder never testified to that alleged fact, and I can find no evidence in the record to support it. Moreover, as the majority acknowledges, carrying a bag of garbage "certainly isn't negligent in and of itself." *Id*.

carrying a bag and looking at where she was heading, i.e., toward the dumpster, was negligent. Instead, with no evidence of carelessness, the Hotel's expert simply speculated that Blanchard was at fault as an invitee for not seeing the Hotel's defective walkway—thus, improperly suggesting that it was Blanchard who should have been looking for defects in the walkway, contrary to our caselaw. *See Templeton*, 679 N.E.2d at 1373 (noting a pedestrian "is not negligent, as a matter of law, in failing to see a defect in plain view").

[37] The inference that Blanchard was negligent may not be reasonably drawn from the undisputed facts without "undue speculation." *Husainy*, 132 N.E.3d at 493. And that speculative testimony, alone, is insufficient to support the jury's finding that Blanchard was negligent. *Cf. St. Mary's Med. Ctr.*, 783 N.E.2d at 285 (upholding a jury finding that plaintiff was not contributorily negligent in a slip-and-fall case where the plaintiff admittedly did not look at the floor while walking but there was no evidence he walked in a "careless manner"). Therefore, I would hold that the trial court erred when it denied Blanchard's motion for judgment on the evidence.